**Ray BLAKEMORE and James. Holloway, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Michael PEKAY and Michael Pekay P.C., Defendants.**

No. 94 C 3418.

United States District Court, N.D. Illinois, Eastern Division.

June 27, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, for plaintiffs.

Dennis Andrew Marks, Michael S. Loeffler, Theodore David Ackerman, G.A. Finch, Andrew S. Nadolna, Querrey & Harrow, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

COAR, Judge.

Before the court are the parties' cross-motions for summary judgment [Docket 23 & 27]. These summary judgment motions both focus on the interpretation of the venue provision of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692i. Specifically, the parties ask this court to address where a collection action properly lies in light of language in the FDCPA which requires a debt collector to file legal actions only in the "district or similar legal entity" where either the debtor lives or where the contract at issue was signed. *See* 15 U.S.C. § 1692i. Plaintiffs maintain that the phrase should be interpreted to mean Municipal District—a subdivision of the First Circuit of the State of Illinois, which is the Circuit Court system for Cook County. Defendants argue that the phrase merely requires suit to be filed in the proper *county,* and thus the Municipal Districts (subdivisions) of Cook County are irrelevant for the purposes of FDCPA's venue statute. After having reviewed the complaint, pleadings, exhibits, and appendices presented, this court decides as follows.

### Background Facts

Although the parties purport to dispute the facts in this case, there is substantial agreement. Plaintiff Ray Blakemore is an individual who resides in Sauk Village, Illinois. (Plaintiff's Statement of Material Facts "PSOMF" ¶ 1). Plaintiff James Holloway is an individual who resides in Joliet, Illinois. (PSOMF ¶ 2).

Defendant Michael Pekay is an attorney licensed to practice within the state of Illinois; Defendant Michael Pekay, P.C. is a law firm in Chicago,, Illinois. (PSOMF ¶¶ 3–4). Defendants regularly engage in the business of collecting debts owed by consumers through correspondence and lawsuits. (PSOMF ¶ 5).

Ray Blakemore and his son Curtis Blakemore entered into a contract to purchase an automobile from Safe–Rite Auto Sales in Sauk Village, Illinois. (PSOMF ¶¶ 9–10). All documents relating to the purchase of the car, including the financing documents, were signed by Ray Blakemore in Sauk Village. (PSOMF ¶ 10).

On or about October 26, 1993, defendants filed suit on behalf of Mercury Finance Company against the Blakemores, listing the Blakemore's address in Sauk Village, in the Circuit Court of Cook County, First Municipal District located in the Richard J. Daley Center, Chicago Illinois. (PSOMF ¶ 12). On or about December 3, 1993 a judgment was entered against the Blakemores. (Defendants' Statement of Material Facts (DSOMF) ¶ 3). On or about December 9, 1993, defendants initiated garnishment proceedings against the Blakemores by filing an Affidavit for Wage Deduction Order in the First Municipal District, listing Blakemore's last known address as Sauk Village, which is in the Sixth Municipal District. (PSOMF ¶¶ 13–14).

The Sixth Municipal District courthouse, which is a Municipal Department of the Circuit Court of Cook County, is located in Markham, Illinois, and is fifteen miles from the Daley Center. (PSOMF ¶ 15; DSOMF ¶ 11). Plaintiffs argue that the collections suit and the garnishment requests should have been filed in the Sixth Municipal Department of Cook County, not the First Municipal Department. Plaintiffs assert that Pekay's allegedly improper filing against Blakemore subjects him to liability under the FDCPA.

Plaintiff James Holloway and his wife Joanne Holloway entered a contract to purchase an automobile from Keigher Motors in Joliet, Illinois. (PSOMF ¶¶ 16–17). All documents relating to the purchase of the car, including the financing documents, were signed by Holloway in Joliet. (PSOMF ¶ 17). The purchase of the car was financed by, or

the financing instrument was assigned to, Mercury Finance Company. (PSOMF ¶ 18).

On or about December 11, 1992, defendants filed suit on behalf of Mercury Finance Company against the Holloways, listing their address in Joliet, in the Circuit Court of Cook County, First Municipal District, located in the Daley Center. (PSOMF ¶ 19; DSOMF ¶ 14). On or about May 11, 1993, the Holloways voluntarily appeared in the Circuit Court of Cook County and consented to the entry of judgment against them in the amount of $2,161.72 plus court costs and agreed to pay $100.00 monthly to Mercury Financing beginning on May 30, 1993. (DSOMF ¶ 15). On or about June 18, 1993, defendants filed an Affidavit for Wage Deduction Order in the First Municipal District listing Holloway's last known address in Joliet. (PSOMF ¶ 20). On or about November 17, 1993, defendants filed another Affidavit for a Wage Deduction Order in the First Municipal District listing Holloway's last known address in Joliet, which is in Will County, Illinois. (PSOMF ¶¶ 21–22). The Will County Courthouse is more than forty miles from the Daley Center. (PSOMF ¶ 23). Plaintiffs maintain that Pekay should have filed both the collections suit and the garnishment requests in Will County, not Cook County. Plaintiffs assert that Pekay's allegedly improper filing against Holloway subjects him to liability under the FDCPA.

### Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928 (7th Cir.1995); *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-

sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If the moving party meets this burden, the non-moving party must then respond by setting forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *see Curtis v. Bembenek*, 48 F.3d 281 (7th Cir.1995). All reasonable inferences from the record are to be drawn in favor of the non-moving party. *Johnson v. Runyon et al.*, 47 F.3d 911 (7th Cir.1995); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994).

Thus, as each party has moved for summary judgment, in order for either to prevail, they must show that the evidence is so one-sided in their favor that there is no genuine issue requiring a trial, and they are entitled to summary judgment as a matter of law. In other words, for the court to grant summary judgment to either the plaintiffs or Pekay, it must appear beyond doubt that the losing party can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 42, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985). If the movant demonstrates that there is no genuine issue of material fact, the opposing party must prove evidence of specific factual disputes. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

### Discussion

#### I. Venue

These summary judgment motions focus on the interpretation of the venue provision of the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. § 1692i, and the FDCPA statute of limitations contained in 15 U.S.C. § 1692k(d). Plaintiffs have moved for partial summary judgment on the issue of defendants' liability under their complaint. Defendants have moved for summary judgment based on three separate theories: (1) because Blakemore resided in Cook County, the collections action initiated by defendants was in the proper venue; (2)

Holloway's claim is barred by the FDCPA's statute of limitations; (3) even if Holloway's claim is not barred by the statute of limitations, Holloway has waived any form of relief under the FDCPA because he voluntarily appeared in Cook County and consented to judgment being entered against him there. Defendants also argue that applying the FDCPA to these circumstances would violate the United States Constitution.[1]

The FDCPA is a broad statute that was designed to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Oglesby v. Rotche*, 1993 WL 460841 (N.D.Ill.1993) (Plunkett, J.) (quoting *Johnson v. NCB Coll. Srvcs.*, 799 F.Supp. 1298, 1303 (D.Conn.1992)) (quoting S.Rep. No. 382, 95th Cong. 1st Sess. 1, 2, reprinted in 1977 U.S.C.C.A.N. 1695, 1696 (the "Senate Report")). The Committee on Banking, Housing, and Urban Affairs, which reported on the Act and recommended it to the Senate, found that debt collection abuse by third party debt collectors is "a widespread and serious national problem." Senate Report at p. 2, 1977 U.S.C.C.A.N. at p. 1696.

▪ The FDCPA only applies to "debt collectors," 15 U.S.C. § 1692g; *Oglesby*, 1993 WL 460841 at *1; *see Jenkins v. Heintz*, 25 F.3d 536, 538–39 (7th Cir.1994), *aff'd*, ── U.S. ──, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), because the Banking Committee con-

cluded that independent debt collectors are "the prime source of egregious collection practices." Senate Report at 2. "Debt collectors" include attorneys when an attorney's principle business is debt collection or who regularly collects the debts of another. *Oglesby*, 1993 WL 460841 at *1, *Jenkins v. Heintz*, 25 F.3d at 539. Law firms regularly engaged in debt collection are similarly constrained by the FDCPA. *See* Federal Trade Commission, *Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 F.R. 50097, 50100, 50102 (1988). These defendants are an individual attorney and his firm (collectively "Pekay"). Plaintiffs have alleged that Pekay regularly engages in collecting consumer debts.[2] (Complaint ¶ 7, PSOMF ¶ 5). Thus, for purposes of deciding the summary judgment motions, the court concludes that the FDCPA applies to Pekay unless Pekay has put that issue into play through affidavits or other evidence (which he has not done).

▪ The FDCPA's venue provision, contained in 15 U.S.C. § 1692i, provides, in pertinent part:

(a) Any debt collector who brings any legal action on a debt against any consumer shall—

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action

---

1. Specifically, Pekay argues that applying the FDCPA here would violate:
   (a) [T]he Tenth Amendment to the United States Constitution by interfering with the powers reserved to the states over their own court systems;
   (b) [T]he Full Faith and Credit Clause of the U.S. Constitution, Article IV, § 1, by interfering with the enforceability of judgments;
   (c) [T]he Due Process clause of the Fifth Amendment by infringing Pekay's right to enforce a judgment in accordance with the applicable state laws.
   The defendants argue that the court need reach these concerns only if it decides against them on the interpretation of the statute. (Defendant's Memo in Support at p. 13).

2. Although Pekay denies this allegation, he has not pointed to "specific references to the affidavits, parts of the record, and other supporting materials relied upon" as required by Local General Rule 12(N) and Fed.R.Civ.P. 56. He must

do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Plaintiffs' attorney has submitted an affidavit showing that he conducted research on how many collections actions Pekay had filed against debtors who did not live in the city of Chicago after June 1, 1993. He found 343 cases in the Illinois Civil Division and 869 in the Illinois Judgement Division. (Appendix D to Plaintiffs' Motion for Partial Summary Judgment, p. 7). Pekay does not have factual information to dispute this evidence, and therefore his bald denial cannot be accepted as true. Indeed, this court noticed in the June 22, 1995 edition of the Chicago Daily Law Bulletin that Pekay had recently been elected to be a member-at-large of the executive committee of the Illinois Creditors Bar Association. *In the bar associations*, Chicago Daily Law Bulletin, June 22, 1995, at 3.

only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (i), bring such action *only in the judicial district or a similar legal entity*—

(A) in which such consumer has signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action. [Emphasis added]

The interpretation of this provision is at issue in this case. The Plaintiff contends that the phrase "judicial district or a similar legal entity" means that a collections action may be brought only in the state municipal district in which they resided or signed the contract. Pekay argues that the phrase should be interpreted to mean that suit may be filed in any of the municipal district courts in the *county* in which either the contract was signed or the debtor resides. Pekay claims that because the Circuit Court of Cook County is one "judicial district or similar legal entity," whether suit is filed in the *closest* municipal district court to the debtor's residence is irrelevant. The phrase is not defined in the FDCPA. *Dutton v. Wolhar,* 809 F.Supp. 1130, 1139 (D.Del.1992); *Action Professional Svc. v. Kiggins,* 458 N.W.2d 365, 367 (S.D.1990). The court concludes that the phrase is ambiguous. *See Newsom v. Friedman,* No. 94 C 5312 Slip Op. at 4, 1995 WL 76869 (N.D.Ill.1995) (phrase is ambiguous).

■■■ When a statute's language is clear, the text controls the interpretation thereof. *Newsom v. Friedman,* No. 94 C 5312 Slip Op. at 4, 1995 WL 76869 (N.D.Ill.1995) (quoting *Jenkins v. Heintz,* 25 F.3d at 538). The Court of Appeals for the Seventh Circuit has often said that the best way to interpret a statute is to look to its plain language because that is "the most reliable indicator of congressional intent." *United States v. Boyles,* 57 F.3d 535 (7th Cir.1995) (quoting *Central States, et al. v. Cullum Companies,* 973 F.2d 1333, 1339 (7th Cir.1992)). In so doing, the court should look to the language and design of the statute as a whole as well as the specific provision at issue. *K Mart*

*Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). However, when a statute is ambiguous, the task of the court is to determine Congress' intent and apply that intent. *Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730, 734 (7th Cir.1991). If the court concludes that the language is ambiguous, the court may then look to the legislative history of the statute in question. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984). This court concludes that the undefined phrase is ambiguous, and therefore it must examine the Congressional intent and other court's interpretations of that intent to determine the meaning of the phrase. *See Dutton* 809 F.Supp. at 1139; *Action Professional Svc.,* 458 N.W.2d at 367.

## A. Legislative History and Federal Trade Commission Letter

The FDCPA was designed to address many forms of collection abuse, including "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." Senate Report at p. 2, 1977 U.S.C.C.A.N. at p. 1696. This list plainly shows that the Act was designed to reach a very broad spectrum of abuses. Congress decided to address these problems because there was a dearth of meaningful legislation on the State level. Senate Report at 2. The use of WATS lines contributed to the growth of debt collection abuses from a State into a national problem, which is how Congress concluded that it had the power to address the issue. Senate Report at 2–3, 1977 U.S.C.C.A.N. at pp. 1696, 1697. ("The committee believes that the serious and widespread abuses in this area and the inadequacy of existing State and Federal laws make this legislation necessary and appropriate.").

■■■ The venue provision of the FDCPA was designed to limit the ability of debt collectors to file debt collection actions in courts inconvenient to the debtor. Senate

Report at 5; *Dutton v. Wolhar,* 809 F.Supp. 1130, 1139 (D.Del.1992); *Action Professional Svc. v. Kiggins et al.,* 458 N.W.2d 365, 367 (S.D.1990). Surprisingly, the venue provision of the FDCPA received very little discussion in both the Senate Report and subsequent commentaries issued by the FTC. *See* Federal Trade Commission, *Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act,* 53 F.R. at 50109 (section that discusses the venue provision does not define the geographic limitations of the "judicial district where the consumer resides or signed the contract sued upon."). Although the Senate Report explicitly "adopts the 'fair venue standards' developed by the Federal Trade Commission. A debt collector who files suit must do so either where the consumer resides or where the underlying contract was signed," it does not explain what those 'fair venue standards' are. Senate Report at p. 5. In toto, the explanation of the venue provision is as follows:

This legislation also addresses the problem of 'forum abuse,' an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. As a result, the debt collectors obtains [sic] a default judgment and the consumer is denied his day in court.

In response to this practice, the bill adopts the 'fair venue standards' developed by the Federal Trade Commission. A debt collector who files suit must do so either where the consumer resides or where the underlying contract was signed.

More than 1,000 collection agencies in all 50 States have already voluntarily agreed to follow these standards. The Commission reports that this standard is effective in curtailing forum abuse without unreasonably restricting debt collectors.

Senate Report at p. 5. Although this court has been unable to locate a copy of the FTC 'fair venue standards,' it has found several consent decrees entered into between the FTC and various businesses in which the concerned firms agree to refrain from filing collections suits in *counties* other than where the debtor is located or where the contract was signed. *In re S.S. Kresge Co.,* 90 F.T.C. 222 (1977) (General merchandiser agreed by consent order to "forthwith cease and desist from authorizing the institution of or instituting retail credit collection suits other than in the *county* where the defendant resides at the commencement of the action, or in the county where the defendant signed the retail credit contract sued upon."); *In re New Rapids Carpet Center, Inc.,* 90 F.T.C. 64 (1977) (Carpet retailer ordered by the FTC to stop instituting collection suits in *counties* other than where the debtor resides or where he signed the contract at issue); *In re Commercial Service Co.,* 86 F.T.C. 467 (1975) [3] (Company ordered by the FTC to stop filing collection suits in *counties* other than where the debtor resides or where he signed the contract at issue); *In re Montgomery Ward & Co.,* 84 F.T.C. 1337 (1974) (same); *In re West Coast Credit Corp.,* 84 F.T.C. 1328 (1974) (same); *see also* Alan K. Chen, *Due Process as Consumer Protection: State Remedies for Distant Forum Abuse,* 20 Akron L.Rev. 9, 16–17 & n. 24 (1986).

Following this authority, defendants contend that all that is necessary is that a collections action be filed in the same *county* as the debtor resides and thus any filing within Cook County is appropriate, regardless of the Municipal District subdivisions. Blakemore asks that this court require that suit be filed in the correct *Municipal District,* which, as will be explained below, is a subpart of the First Judicial District, or, in other words, a subdivision of the Cook County Circuit Court system.

Another part of the reason for the distinction between filing in the wrong *county,* which is clearly a violation of section 1692i, *see Oglesby et al v. Rotche et al.,* 1993 WL 460841 (N.D.Ill.1993) (Plunkett, J.); *Newsom v. Friedman,* No. 94 C 5312 Slip Op. at 4 (N.D.Ill.1995) (Kokoras, J.); *Action Professional Svc. v. Kiggins et al.,* 458 N.W.2d 365 (S.D.1990); *Dutton v. Wolhar,* 809 F.Supp.

**3.** It should be noted that the FDCPA was passed in 1977. Therefore, cases before that time may be used to determine the practice of the FTC in combatting unfair collections practices but may not be deemed to show the interpretation of the FDCPA itself.

1130 (D.Delaware 1992); and *Shapiro and Meinhold et al. v. Zartman,* 823 P.2d 120, 123 (Colo.1992), and filing in the wrong (state) municipal judicial districts is reliance on a Federal Trade Commission (FTC) staff letter dated September 12, 1989. The September 12, 1989 staff letter explains that section 1692i(a)(2):

> Requires that the suit be brought in the county where the consumer resides at the commencement of he [the] action regardless of the fact that the other four counties are located within the same judicial circuit.... Congress intended to incorporate into section 811 [codified at 15 U.S.C. § 1692i(a)(2)] the "fair venue standards" developed by the Federal Trade Commission under section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Under those standards, the Commission had consistently prohibited the bringing of suits in *counties* other than where consumers reside or signed the contracts sued upon, the Commission's objective being to insure that consumers are sued in the most convenient and closest forums. [Emphasis in original]

(Letter from Rachelle Browne to John P. Schwulst of 9/12/92). This FTC letter plainly states that suits are prohibited only in *counties* other than the one in which the consumer resides or contracted. The venue restrictions of the FDCPA are "directed to address forum abuse," and are patterned after the venue standards developed by the FTC pursuant to their power under Federal Trade Commission Act, 15 U.S.C. § 45. *Id.* In light of the framework outlined in the letter, the question of what weight to give the FTC letter arises.

■■■ The weight of FTC informal letters is limited by the restricted interpretive power given to the FTC under the FDCPA. *Cortright v. Thompson,* 812 F.Supp. 772, 776 (N.D.Ill.1992) (citing *Pressley v. Capital Credit & Collection Svc.,* 760 F.2d 922, 925 (9th Cir.1985)). FTC letters are "merely suggestions that the stated interpretations are *the more likely interpretation* of the statute." *Cortright v. Thompson,* 812 F.Supp. at 776 (emphasis added) (citing *Staub v. Harris,* 626 F.2d 275, 279 (3d Cir.

1980)). Thus, although informal FTC letters may not be directly relied upon in reaching legal conclusions, they do shed light on how the agency interprets and enforces the statute in question. This court finds the letter persuasive, and, although the letter itself may not have substantial weight in this court, this court may adopt the reasoning contained therein. The court does so, also giving deference to the FTC decisions and consent decrees which all use the State *county* as the appropriate geographic boundary in deciding proper venue under the FDCPA. *See In re S.S. Kresge Co.,* 90 F.T.C. 222; *In re New Rapids Carpet Center, Inc.,* 90 F.T.C. 64.

■■■ Both the FTC history and the legislative history, therefore, support the view that the phrase "judicial district or similar legal entity" means, at a minimum, that the suit should be filed in the state *county* in which either the debtor resides or where the contract in dispute was signed.

### B. Analysis of Illinois Law

■■■ Defendants point to several sections of Illinois State law and the Illinois State Constitution which they assert support their interpretation of the venue statute to mean that a collections action may be filed in the county in which the debtor either resides or entered into the contract at issue. Plaintiffs assert that Illinois law supports *their* interpretation.

The Illinois State Constitution provides: "The State shall be divided into Judicial Circuits consisting of one or more Counties. The First Judicial District shall constitute a Judicial Circuit." Ill. Const. art VI, § 7. The First Judicial District consists of Cook County, with the remainder of the state being divided into four Judicial Districts for the selection of Supreme and Appellate Court Judges. Ill. Const. art. VI, § 2. The First Judicial District (and only the First Judicial District), in turn, is divided into the "County Department" and the "Municipal Department." Circuit Court of Cook County General Order (CCGO) No. 2.1–2.2. The County Department consists of a number of divisions including law, domestic relations, county, probate, juvenile, and criminal divisions. CCGO No. 2.1. The Municipal Department

of the First Judicial District, in turn, is divided into six "Municipal Districts" according to geography.[4] CCGO 2.2(c) provides that civil actions in the municipal department are to be filed in the district in which any defendant resides or where the transaction or some parte thereof occurred. However, the Cook County General Orders specifically provide that actions within the First Judicial District may be assigned to *any* Judge or Associate Judge of the Circuit Court for Cook County for hearing or trial "regardless of the department, division, or district in which the case was filed or to which the judge is regularly used." CCGO No. 1.3(a). Litigants must appear before the Judge assigned to the particular case, motion, hearing, or trial, wherever situated within the District. Municipal Districts thus appear to be irrelevant for purposes of granting hearings and trials to the parties. Instead, the division of the Circuit Court into sub-county units appears to be an administrative device only sometimes related to where, within the county, the defendant resides.

■ Nonetheless, the court is unable to make the leap of logic to conclude that because some hearings may take place in Municipal Districts other than where the case was filed, Illinois law therefore supports the reading that Municipal Districts are not essential geographic separations within the judiciary of Cook County. Nonetheless, this conclusion is not necessarily fatal to defendants' argument. Although the *Newsom* court discussed those parties' arguments based on state venue laws, the FDCPA venue provision is found in a *federal* statute, and both the legislative history and the FTC interpret the phrase to limit the filing to the proper county. The Supreme Court has counselled regarding statutes of limitations

that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), quoted in *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 148, 107 S.Ct. 2759, 2763, 97 L.Ed.2d 121 (1987), it is appropriate to select a federal statute of limitations. *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1387 (1990), *cert denied,* 501 U.S. 1250, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991) (declining to apply state statute of limitations to Rule 10b–5 actions because federal statutes are a closer analogy than state law). This conclusion is relevant because Illinois state law is ambiguous as to the function of the Municipal Districts. Nothing that the parties have cited or that this court has discovered in its research in either federal or state law requires that the phrase "judicial district or similar legal entity" must mean the state equivalent of federal district courts, contrary to defendant's contention. *See* Defendants' Memo in Support at p. 5. At best, Illinois State law is largely irrelevant to the interpretation of a federal statute, and even if it were not, Illinois law is ambiguous regarding its treatment of the Municipal Districts of the First Department, *see Newsom,* slip op. at 8, and this court may apply the federal legislative history and FTC interpretations to conclude that filing an action in the proper county is all that is required by the FDCPA's venue provision.

## C. Precedent Favoring County Venue Requirement

Although the Court of Appeals for the Seventh Circuit has not yet reached this

---

**4.** District One is the City of Chicago; District Two consists of the Townships of Evanston, Maine, New Trier, Niles, Northfield, and Wheeling; District Three is the Townships of Barrington, Elk Grove, Hanover, Norwook Park, excluding that part lying within the territorial limits of the City of Chicago, Palatine, Schaumburg, that part of the Township of Leyden lying within the territorial limits of the municipality of Rosemont; District Four consists of the Townships of Berwyn, Cicero, Leyden, excluding that part lying within the territorial limits of the municipality of Rosemont, Oak Park, Proviso, Rover Forest, and Riverside; District Five consists of the Townships of Lemont, Lyons, Orland, excluding that part lying within the territorial limits of the municipality of Tinley Park, Palos, Stickney, and Worth; and District Six consists of the Townships of Bloom, Bremen, Calumet, that part of the Township of Orland lying within the territorial limits of the municipality of Tinley Park, Rich, and Thornton. Rules of the Circuit Court for Cook County, General Order No. 2.2.

issue, other courts have expressed an opinion on the interpretation of the phrase "judicial district or similar legal entity." In *Oglesby et al v. Rotche et al.*, 1993 WL 460841 (N.D.Ill.1993) (Plunkett, J.), the court found a violation of section 1692i where a collection action was filed in Cook County when the automobile lease in question was signed in Lake County and the defendant resided in Lake County.

In *Newsom v. Friedman*, No. 94 C 5312, 1995 WL 76869, Slip Op. at 4 (N.D.Ill.1995) (Kokoras, J.), the court concluded that a collections action filed in Cook County against a Schaumburg, Illinois (located in Cook County) resident for services rendered in DuPage County, did not violate section 1692i. The Schaumburg courthouse, in the Third Municipal District, is located in Rolling Meadow, Illinois. The *Newsom* court distinguished *Oglesby* because the collections action was filed in a different county than the one in which the defendant resided. By contrast, the defendant in *Newsom* lived in Cook County, although not in the same *Municipal District* as the one in which the case was filed.

■ Cases from other jurisdictions parallel the *Newsom* court's distinction between cases being filed in the same county in which the defendants resides, although in different municipal districts, and cases in which the action was filed in a county other than that in which the defendant resides. *See, e.g., Action Professional Svc. v. Kiggins et al.*, 458 N.W.2d 365 (S.D.1990) (FDCPA requires suit to be filed within same county, where defendant lived in different county from the one in which the action was filed the suit violated the FDCPA venue provision.); *Dutton v. Wolhar*, 809 F.Supp. 1130 (D.Delaware 1992) (The phrase "judicial district or similar legal entity" means *state* judicial district, but in light of the Federal Trade Commission's directives, section 1692i is violated only when the suit is brought in a different *county* than that which the debtor resides.); *Shapiro and Meinhold et al. v. Zartman*, 823 P.2d 120, 123 (Colo.1992) (en banc) (To state a claim for relief under section 1692i, the debtor must allege that a debt collector brought suit against them in a *county* other than that in which the real property is located.) The

weight of the case law thus appears to favor the interpretation of the phrase "judicial district or similar legal entity" as meaning state county. This court concludes that in light of the legislative history, the informal FTC letter, and previous case law, the FDCPA venue provision prohibits debt collectors from filing legal actions on debts in *counties* other than where the debtor resides or where the contract that is being sued upon was signed.

### D. Application

■ Applying the conclusion that the phrase "judicial district or similar legal entity" means suit must be filed within the same *county* in which the debtor resides or where the contract was signed to these two plaintiffs, it becomes clear that Blakemore, who is a Cook County resident, does not state a claim for relief. The collections action filed against him in the First Municipal District was filed in the county in which he resides, and therefore venue was proper.

■ Holloway stands in a different posture. He resides and contracted in Will County, while the collections action was initiated in Cook County. Moreover, the Will County courthouse is forty miles from the Daley Center, a considerably greater distance. Thus, Holloway may prosecute this action. *See infra Oglesby et al v. Rotche et al.*, 1993 WL 460841 (N.D.Ill.1993) (Plunkett, J.); *Newsom v. Friedman*, No. 94 C 5312, 1995 WL 76869, Slip Op. at 4 (N.D.Ill.1995) (Kokoras, J.); *Action Professional Svc. v. Kiggins et al.*, 458 N.W.2d 365 (S.D.1990); *Dutton v. Wolhar*, 809 F.Supp. 1130 (D.Delaware 1992); and *Shapiro and Meinhold et al. v. Zartman*, 823 P.2d 120, 123 (Colo.1992).

### II. Statute of Limitations on Holloway's Claim

■ Defendants argue that Plaintiff Holloway's claim is barred by the one year statute of limitations contained in 15 U.S.C. § 1692k(d). Holloway admits that this action was brought more than one year after the collections action was brought against him in June of 1993. However, Holloway argues that his claim is valid because Pekay instituted "legal action on a debt" within the one year limitations period by filing two Affida-

vits for Wage Deduction Orders within the one year period.

Section 1692k(d) provides: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs.*"

The "date on which the violation occurs" was also left undefined by the FDCPA. Courts have attained some consistency in construing this phrase. The Court of Appeals for the Ninth Circuit addressed this issue in *Fox v. Citicorp Credit Svcs., Inc.,* 15 F.3d 1507, 1515 (9th Cir.1994), and concluded that the phrase in 15 U.S.C. § 1692i reaching "any legal action on a debt" encompasses *all* judicial proceedings, including those in enforcement of a previously adjudicated right. *Fox,* 15 F.3d at 1517. The specific legal action at issue in *Fox* was, as is the case here, an application for a writ of garnishment. *Fox,* 15 F.3d at 1517. Thus, *Fox* is exactly on point, and concluded that a writ of garnishment is a "legal action on a debt" within the purvey of the FDCPA.

Other circuits are in accord. Giving great weight to Congress' intent to protect consumer debtors from harassing collection actions, the Court of Appeals for the Eighth Circuit concluded that the proper date on which letter that allegedly violated the Act was the date the collector placed the letter in the mail because the focus of that protection was regulation of debt collector's conduct. *Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259, 261 (8th Cir.1992). *See also Drumright v. Collection Recovery, Inc.,* 500 F.Supp. 1 (M.D.Tenn.1980) (statute starts to run on date of mailing for some violations). The *Mattson* court also concluded that the date of the mailing was also appropriate because it may be "fixed by objective and visible standards." *Mattson,* 967 F.2d at 261; *cf. Bates v. C & S Adjusters, Inc.,* 980 F.2d 865 (2d Cir.1992) (Noting, in dicta, that a plaintiff's cause of action might not accrue until *receipt* of the collection notice for purposes of the Act's one-year statute of limita-

tions because that is when the injury would occur, citing *Seabrook v. Onondaga Bureau of Medical Economics, Inc.,* 705 F.Supp. 81, 83 (N.D.N.Y.1989) ("more likely" that statute would start to run only "on the date the debtor received the communication" because without receipt of the letter there would have been no injury under the FDCPA)). Plaintiffs here appear to have been aware of the filing of the garnishment actions because they complain of the actions in their complaint, and therefore the concern of the courts in *Bates* and *Seabrook* of actual injury has been satisfied.

This court concludes that Pekay's Affidavits for Wage Deduction Orders are "legal action[s] on a debt." *See Fox,* 15 F.3d at 1517. The Affidavits regarding Holloway were filed on June 18, 1993 and November 17, 1993. This action was filed on June 2, 1994. Thus, this action falls within the one year limitations period for both of the Affidavits, which were both filed improperly in Cook County. The action is not time barred, and Holloway may proceed with the action. This conclusion is supported by the *Mattson* analysis of allowing the date from which the statute of limitations runs to be an objective and visible date.

### III. Holloway's Waiver of FDCPA Violation

■ Defendants argue that even if there was a venue violation regarding Holloway's claim and the statute of limitations did not bar this action, they still have an affirmative defense. Defendants maintain that because Holloway appeared in the First Municipal District proceeding and consented to judgment against him on the debt, he has waived any relief under the FDCPA. Defendants have cited no case law which supports their position. Indeed, in *Oglesby v. Rotche* this court explicitly concluded:

> Plaintiffs argue that section 1962i creates a statutory tort, the elements of which are completed when a lawsuit is filed in the wrong venue. We reject Defendants' waiver argument. To require the "least sophisticated consumer"[5] to exercise his

---

5. The Seventh Circuit modified the "least sophisticated consumer" standard of measuring viola-

tions of the FDCPA to an "unsophisticated consumer" standard in *Gammon et al. v. GC Svcs.*

rights under the FDCPA immediately or lose them is contrary to the basis premise of the Act, which is to protect unsophisticated debtors from debt collectors who may use the legal system, about which the consumer has little knowledge, to bludgeon them into submission. 1993 WL 460841 at *10; *see also Azar v. Hayter et al.,* 874 F.Supp. 1314, 1317 (N.D.Fla.1995) (refusing to find waiver of FDCPA claim as a compulsory counterclaim to the state court action because the "plaintiff's FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt."). In light of *Oglesby, Azar,* and the broad remedial purpose of the FDCPA, the court does not find waiver. *See* Senate Report at 1–4.

## IV. Constitutionality of FDCPA

Defendants have challenged the FDCPA's facial constitutionality if the venue provision is interpreted as requiring anything more than *filing suit in the same county as the* defendant resides or signed the contract at issue. As this court has adopted the interpretation of the statute envisioned by the defendants, there is no need to address any alleged constitutional infirmities of an alternative interpretation.

### *CONCLUSION*

For the reasons stated in this memorandum opinion, the court concludes that the phrase "judicial district or similar legal entity" contained in 15 U.S.C. § 1692i prohibits the filing of suits only in state *counties* other than in which the consumer debtor resides or contracted on the debt in question.

WHEREFORE, Defendants' Motion for Summary Judgment [Docket 27] is granted in part and denied in part. Defendants' Motion for Summary Judgment as to Plaintiff Ray Blakemore is GRANTED and Blakemore is DISMISSED from this action with

*Ltd. Partnership,* 27 F.3d 1254, 1257 (1994). The distinction is irrelevant for the purposes of this

prejudice. Defendants' Motion for Summary Judgment against Plaintiff James Holloway is DENIED.

Plaintiff Holloway has succeeded on the merits. The Federal Rules of Civil Procedure constrain this court to undertake very precise drafting when granting summary judgment. *See Trippe Mfg. Co. v. American Power Conservation Corp.,* 46 F.3d 624, 626 (7th Cir.1995). This court must award a specific amount of damages in order to enter summary judgment, which is a final judgment in the case. Problematically, Holloway has not asked for a specific amount of damages to be awarded. The FDCPA provides that a successful individual plaintiff may recover (1) actual damages; (2) additional damages not to exceed $1,000; and (3) costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a). There are additional provisions for the computation of damages for class actions. 15 U.S.C. § 1692k(a)(2)(B). Holloway purports to represent a class in this action. Although a motion for certification of a class has been filed [Docket 7], it was stricken pending decision on the cross motions for summary judgment. [Docket 20]. Damages cannot be calculated until after a decision is made on the motion for class certification. Thus, a final decision on Plaintiffs' Partial Motion for Summary Judgment [Docket 23] is held in abeyance. WHEREFORE Plaintiffs are hereby given leave to refile a Motion for Class Certification on or before July 15, 1995.