958 A.2d 1014 (2008)
403 N.J. Super. 389
RUTGERS-THE STATE UNIVERSITY, Plaintiff,
v.
Alter FOGEL, Defendant/Third-Party Plaintiff-Appellant,
v.
Hayt, Hayt & Landau, L.L.C., Third-Party Defendant-Respondent.
No. A-1493-07T2.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 2008.
Decided November 7, 2008.
*1015 Law Office of Glen H. Chulsky, Dover and Galex Wolf, L.L.C., North Brunswick, for appellant (Glen H. Chulsky and Andrew R. Wolf, on the brief).
Hayt, Hayt & Landau, L.L.C., for respondent (William J. Malvey, Eatontown and Raymond J. Noonan, Sea Girt, on the brief).
Before Judges LISA, REISNER and ALVAREZ.
The opinion of the court was delivered by
REISNER, J.A.D.
In this case, we hold that the venue section of the Federal Fair Debt Collection Practices Act (Act), 15 U.S.C.A. § 1692i, requires that debt collection actions be filed either in the county where the debtor lives or in the county where the debtor signed the contract underlying the debt. We therefore reverse two October 15, 2007 motion orders which denied summary judgment to the debtor, third-party plaintiff Alter Fogel, and granted summary judgment in favor of the law firm he sued for violating the Act, third-party defendant Hayt, Hayt & Landau, L.L.C.

I
These are the most pertinent facts. On September 19, 1992 and October 25, 1993, Alter Fogel, then a student at Rutgers School of LawNewark, signed two $2000 promissory notes for repayment of student loans extended under the Federal Carl D. Perkins Loan program. Both promissory notes concerned debts for "personal, family, or household purposes," see 15 U.S.C.A. § 1692a(5), making their collection subject to the Act.
Although Rutgers University (Rutgers) has its central administrative offices in New Brunswick, Middlesex County, New Jersey, Fogel attended law school in Newark, Essex County, New Jersey. Consequently, while both notes recited that Fogel would pay "Rutgers-The State University ... located at New Brunswick," there is no dispute that Fogel signed the notes either in Brooklyn, New York, where he resided at the time, or in Newark, where the law school was located. Fogel's permanent Brooklyn address was included in both notes, enabling a debt collector to serve him there.
Fogel failed to repay the notes and, eventually, Rutgers sought to collect the debt. On December 28, 2006, Hayt, Hayt & Landau (HHL), representing Rutgers, filed a Special Civil Part complaint in Middlesex County, seeking to collect approximately $8000 plus additional interest, costs and counsel fees. HHL successfully served Fogel with the complaint at the same Brooklyn address listed in the loan documents.
*1016 Fogel filed a pro se answer to the complaint, asserting as one of his affirmative defenses that the action was filed in the wrong venue.[1] He also retained separate counsel to file a third-party complaint against HHL for violating his rights under the Act. In pertinent part, the third-party complaint alleged that HHL had engaged in unconscionable or unfair means to collect the debt by filing the action against Fogel in violation of the venue requirements of 15 U.S.C.A. § 1692i. Fogel sought damages and counsel fees, plus injunctive relief against future violations of the Act. See 15 U.S.C.A. § 1692k(a).[2]
Fogel filed a motion for partial summary judgment as to liability only on the third-party complaint, and HHL cross-moved for summary judgment dismissing the third-party complaint.[3] On October 15, 2007, the Law Division judge denied Fogel's motion and granted HHL's motion. He reasoned that because the notes recited that Rutgers was located in New Brunswick, Middlesex County, Fogel had "conceded ... that's where the loan agreement was made for purposes of this action and that by signing the agreement and agreeing that Rutgers is a Middlesex County resident or entity[,] suit is properly brought in Middlesex County under the Fair Debt Collection Practices Act."

II
We review the trial court's grant of summary judgment de novo, employing the same legal standard used by the motion judge: whether there are material facts in dispute and, if not, whether the undisputed facts viewed most favorably to the nonmoving party nonetheless entitle the moving party to judgment as a matter of law. See Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). We owe no deference to a trial court's interpretation of the law. Manalapan Realty v. Manalapan Twp. Committee, 140 N.J. 366, 378, 658 A.2d 1230 (1995). While the material facts are undisputed on the venue issue, we disagree with the trial court's construction of the Act.
In adopting the Act, 15 U.S.C.A. §§ 1692 to 1692o, Congress left no doubt that its purpose was to protect debtors from abuse and that Congress perceived a need for national uniformity to fulfill that goal:
(a) Abusive practices. There is abundant evidence of the use of abusive, deceptive, *1017 and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
....
(e) Purposes. It is the purpose of this title [15 U.S.C.S. §§ 1692 et seq.] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.
[15 U.S.C.A. § 1692 (emphasis added).]
To further the goal of protecting consumers, the Act provides that, with the exception of actions concerning real estate, debt collectors must file collection actions where the consumer lives or where the contract creating the debt was signed:
(a) Venue. Any debt collector who brings any legal action on a debt against any consumer shall
(1). ... bring such action only in the judicial district or similar legal entity
....
(A) in which such consumer signed the contract sued upon; or
(B) in which such consumer resides at the commencement of the action.
[15 U.S.C.A. § 1692i (emphasis added).]
The dispute in this case centers on the meaning of the term "judicial district or similar legal entity." Ibid. In considering this issue we are mindful that the Act is to be construed in accordance with its "broad remedial scope" and in light of its purpose to protect consumers against unfair debt collection practices. Hodges v. Sasil Corp., 189 N.J. 210, 222, 915 A.2d 1 (2007)(quoting Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002), cert. denied, 539 U.S. 916, 123 S.Ct. 2288, 156 L.Ed.2d 132 (2003)). Moreover, "[a]s the United States Court of Appeals for the Seventh Circuit aptly noted, `concerns about interfering with litigation are alone insufficient to warrant ignoring the [FDCPA]'s plain language.'" Hodges, supra, 189 N.J. at 231, 915 A.2d 1 (citation omitted).
We next consider the specific purpose of the venue provision. Its history indicates that Congress intended to prevent "forum abuse":
This legislation also addresses the problem of `forum abuse,' an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. As a result, the debt collector obtains a default judgment and the consumer is denied his day in court.
[S.Rep. No. 95-382, 95th Cong., 1st Sess. 1977, 1977 WL 16047, at *5 (1977), as reprinted in 1977 U.S.Code Cong. & Admin.News. 1695, 1699.]
Further, "[t]he venue provision was an `attempt to minimize the perceived imbalance of power between debtors and creditors by requiring venue for consumer debt actions in a locale convenient to the debtor.'" Zartman v. Shapiro & Meinhold, 811 P.2d 409, 412 (Colo.Ct.App.1990), aff'd, 823 P.2d 120 (Colo. 1992) (quoting Sweig, Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act, 21 New Eng. L.Rev. 697, 705 (1986)).
While the venue issue is novel in New Jersey, it has been addressed by a number of federal and state courts, all of which reached similar conclusions. The term "judicial district" has generally been *1018 construed as referring to the geographic units into which a state divides its judiciary. The rationale for this interpretation was cogently explained in Dutton v. Wolhar, 809 F.Supp. 1130 (D.Del.1992), aff'd, 5 F.3d 649 (3d Cir.1993). There the court first determined that "judicial district" referred to state rather than federal districts. In reaching this conclusion, the court relied both on the history of the Act and its construction by the Federal Trade Commission, the agency charged with enforcing the Act:
Contrary to defendants' position [that the term refers to federal judicial districts], examination of the Act's purpose leads to the conclusion that the term "judicial district or similar legal entity" refers to state, rather than federal, judicial districts or other legal entities. Congress indicated the purpose of § 1692i is to prevent debt collectors from bringing collection suits in forums located at great distances from debtors' residences. Since federal judicial districts or legal entities are more likely to be much larger than correlative state units, looking to state rather than federal judicial districts or legal entities is more likely to further Congress's goal of preventing the filing of debt collection suits at great distances from debtors' residences. In addition, Congress wanted to prevent forum abuse and surely knew the prevalent practice among debt collectors is to bring suit in state court. See FTC Informal Staff Letter to Brown, February 14, 1989. It follows that when Congress referred to "judicial district or similar legal entity" it did not mean federal judicial districts. This conclusion is in accord with the Federal Trade Commission interpretation of this phrase. FTC Informal Staff Letter to Brown, February 14, 1989. Although FTC Informal Staff letters are not binding on this Court, the Court may give them some weight in interpreting the FDCPA. Staub v. Harris, 626 F.2d 275, 279 (3d Cir.1980).
[Id. at 1139 (citation omitted).]
Turning next to the issue of what constituted a state "judicial district," the court looked to the organization of the Delaware court system to determine that "district" meant "county."
Having decided that this Court must look to state judicial districts or legal entities in interpreting § 1692i, the Court must now determine the meaning of "judicial district or similar legal entity." The Delaware Code does not define Justice of the Peace Courts in terms of judicial districts. The Code, however, does refer to similar legal entities, specifically counties. Del.Code Ann. tit. 10 § 9206 (1975 and Supp. 1990) ("Each justice shall serve in the county in which he resides...."). Although in Delaware civil actions may generally be brought in a county other than the one in which the defendant resides, 10 Del.Code Ann. tit. 10 § 9302 (1975), the term "judicial district or similar legal entity" in § 1692i appears to provide that when such action is one to collect a debt, institution of suit is limited to the county in which the alleged debtor resides or signed the contract forming the basis of the debt.
This is consistent with the legislative history of the Act. Senate Report 382 provides that by enacting § 1692i Congress intended to adopt the "fair venue standards" developed by the Federal Trade Commission. Those standards permit a debt collector to sue ... on a debt only in the county in which the alleged debtor resides or signed the contract upon which the suit is premised. In re New Rapids Carpet Center, Inc., 90 F.T.C. 64 (1977); FTC Informal Staff Letter to Schwulst, September 12, 1988.
[Ibid. (citation omitted).]
*1019 This construction was followed in Martinez v. Albuquerque Collection Servs., 867 F.Supp. 1495 (D.N.M.1994): "When collection suits are filed in state court, `judicial district or similar legal entity' refers to judicial subdivisions of a state court system, not to federal district court subdivisions." Id. at 1501-02 (citing Dutton, supra, 809 F.Supp. at 1139). Similar reasoning prevailed in the Supreme Court of South Dakota:
If a debt collector files a debt collection action in state court it must be filed in the state "judicial district or similar legal entity" in which the contract was signed or where the debtor resides. In South Dakota state court the "judicial district or similar legal entity" is the circuit courts as established by state law. On the other hand, if an action is properly initiated and maintained in federal district court the term "judicial district or similar legal entity" refers to the federal judicial district as established under federal law. Thus, a debt collection action initiated in federal court must be filed in the federal district in which the contract was signed or the debtor resides.
Understanding congressional intent in the adoption of the FDCPA explains and justifies this dichotomy. Congress intended that FDCPA actions could be filed in state courts as well as federal courts. 15 U.S.C. § 1692k(d). See also Senate Report, supra, [No. 95-382, 95th Cong., 1st Sess. 1977, 1977 U.S.Code Cong. & Admin.News.] at 1702. Similarly, if jurisdiction otherwise exists, a debt collection action may be filed in federal or state court.... We believe the intent of Congress was that forum abuse be prevented by requiring that state court actions be filed in the appropriate state court "judicial district or similar legal entity." In South Dakota that is the circuit court.
[Action Professional Serv. v. Kiggins, 458 N.W.2d 365, 367 (S.D.1990).]
Likewise in Blakemore v. Pekay, 895 F.Supp. 972 (N.D.Ill.1995), the court concluded that debt collection actions in state courts must be filed in the county where the debtor resides or where the contract was filed:
The weight of the case law thus appears to favor the interpretation of the phrase "judicial district or similar legal entity" as meaning state county. This court concludes that in light of the legislative history, the informal FTC letter, and previous case law, the FDCPA venue provision prohibits debt collectors from filing legal actions on debts in counties other than where the debtor resides or where the contract that is being sued upon was signed.
[Id. at 982.]
Accordingly, the court looked to the Illinois Constitution, which divided the state court system into "Judicial Circuits consisting of one or more Counties." Id. at 980 (quoting Ill. Const. art VI, § 7). The court concluded that a lawsuit filed in Cook County against a resident of that County did not violate the Act, even though for some administrative purposes the Cook County judicial circuit was further subdivided into municipal districts. Id. at 980-81. See also In re Lord, 270 B.R. 787, 797 (Bankr.M.D.Ga.1998) (construing "judicial district" to mean "county").
In Newsom v. Friedman, 76 F.3d 813 (7th Cir.1996), the court reached a similar conclusion. Reasoning that "Congress is presumed to adopt the common legal understanding of the legal terms it employs and the `absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them,'" the court consulted Black's Law *1020 Dictionary for the definition of "judicial district." Id. at 817 (quoting Molzof v. United States, 502 U.S. 301, 307-08, 112 S.Ct. 711, 716, 116 L.Ed.2d 731 (1992)). Black's defined the term as
One of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority; or the district may include two or more counties, having separate and independent county courts, but in that case they are presided over by the same judge.
[Black's Law Dictionary 591 (6th ed. 1991).]
Because the Illinois Constitution divided the state court system into judicial circuits, and Cook County constituted one judicial circuit, the court concluded that a lawsuit filed in Cook County was properly venued under section 1692i, even though that circuit was divided into smaller municipal districts for administrative convenience. Newsom, supra, 76 F.3d at 819-20.
In Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir.1994), the court also looked to the organization of the Arizona state court system in construing the venue requirement of section 1692i. Citicorp persisted in filing collection actions against the Foxes in a neighboring county, although the Foxes had twice successfully moved under state law to have the suits transferred to the county where they lived. Id. at 1510. Finally, the Foxes sued Citicorp for violating 15 U.S.C.A. § 1692i. The Ninth Circuit considered the purpose of the Act to protect consumers, in concluding that a debt collector must file in the debtor's home county rather than in a neighboring county that was part of the same multi-county judicial district:
[T]he defendants argue that Maricopa County and Pima County are not separate "judicial districts"; therefore, filing the application in the former rather than in the latter establishes no venue violation. Section 1692i specifies "judicial district or similar legal entity." We have no difficulty in concluding that the two counties are different venues under the FDCPA where the state has provided a formal transfer mechanism ... between courts in the two counties. The fact that, as the defendants argue, the state of Arizona constitutes a single federal judicial district and has a unitary state superior court has no effect on our conclusion. See Dutton v. Wolhar, 809 F.Supp. 1130, 1139 (D.Del.1992)(rejecting similar contention).
[Id. at 1515-16.]
In Nichols v. Byrd, 435 F.Supp.2d 1101 (D.Nev.2006), the court followed Fox in holding that, for purposes of section 1692i, venue must be laid in the state judicial unit which has jurisdiction over the claim, if that unit is smaller than a county. The court reasoned that "[i]n Nevada, actions for the recovery of a sum of less than $10,000 are to be brought in the justice courts, which primarily encompass townships," id. at 1108, and a debtor could have a collection action transferred if it was filed in the wrong township. Therefore, the court concluded that under section 1692i, a collection action must be filed in the justice court in the township in which the debtor lived. Ibid.
We find a pervasive theme in all of the cases discussed here. The Act is to be construed in accord with its purpose to prevent litigation abuse and to maximize the consumers' opportunity to respond to debt-collection litigation. And its terms are to be given their ordinarily-understood legal meaning.
*1021 This approach is consistent with our Supreme Court's recent construction of the Act in Hodges v. Sasil Corp., supra, a case involving application of the Act to attorneys who file summary dispossess actions against tenants.
When interpreting a statute, the Legislature's intent is paramount and, generally, the statutory language is the best indicator of that intent. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). Statutory words are ascribed their ordinary meaning and are read in context with related provisions, giving sense to the legislation as a whole. Ibid.

[Hodges v. Sasil Corp., supra, 189 N.J. at 223, 915 A.2d 1.]
In Hodges, the Court looked to Black's Law Dictionary in determining that rent constituted "debt" for purposes of the Act. The Court reasoned that "summary dispossess litigation is an effectiveand at times coercivemechanism for collecting rent and other fees." Id. at 226, 915 A.2d 1. Looking to the Act's purpose, the Court concluded that "[a]pplication of the [Act] to law firms regularly engaged in summary dispossess actions furthers the congressional objective underlying the statuteprotection of consumers from debt collectors who coerce payment of debts and additional charges." Id. at 228, 915 A.2d 1.
Because we find Dutton, Newsom and similar cases persuasive and consistent with our Court's approach to statutory construction, we conclude that "judicial district" as used in section 1692i should be construed as it was in Newsom and Dutton. Employing this method, we consider the organizational structure of New Jersey's court system. Under the New Jersey Constitution, our trial courts are organized by county. The Superior Court "shall at all times consist of at least two judges who shall be assigned to sit in each of the counties of this State." N.J. Const. art. VI, § 3, ¶ 1. Additionally, our Rules of Court address venue in terms of the "county" in which legal actions shall be filed. See R. 4:3-2(a); R. 4:3-3(a). While our courts are further administratively organized into vicinages, twelve of which have only one county and three of which include more than one county, R. 1:33-2,[4] we conclude that the basic "judicial district" within the meaning of section 1692i is the county. See Newsom, supra, 76 F.3d at 818. Moreover, even if the appropriate judicial district were the vicinage, Essex is not a multi-county vicinage. Therefore, HHL should have filed its collection action in Essex County, where the contract was signed,[5] or in Brooklyn, where Fogel lives.
This construction is consistent with the Act's purpose to prevent litigation abuse by debt collectors. We find no merit in HHL's arguments that Fogel is an attorney, well able to defend himself in Middlesex County, and that Middlesex is not appreciably farther from Brooklyn than Essex County. The Act sets forth a bright-line venue rule. It does not require a case-by-case inquiry into the relative sophistication of each debtor, nor into the relative hardship posed by the collection attorney's choice of venue.
While Fogel happens to be an attorney, who has found a law firm to represent him, not every debtor has the resources to enforce his or her rights under the Act. The next case might involve an unsophisticated *1022 low-income debtor from northern Sussex County facing a collection suit in Cape May County. That choice of venue might well preclude the debtor from appearing in the action.
We also find no merit in HHL's reliance on Rule 4:3-2(a), which provides that actions filed by public agencies shall be brought "in the county in which the cause of action arose" and generally permits other types of actions to be filed in the county in which either party resides. See Fine v. Rutgers, 163 N.J. 464, 472, 750 A.2d 68 (2000). HHL further contends that the Act "does not change state or federal law relating to venue" so as to trump the provisions of this Rule. We disagree.
In support of its argument, HHL cites to House of Representative Report No. 95-131, which states that "the prohibitions of this section [1692i] apply to debt collectors directly, and do not change state or federal law relating to venue, service of process, or the conduct of any officer or employee of the United States or any state whose duties include the service of legal papers." H.R. Rep. No 95-131, at 6 (1977). The language appears primarily to be concerned with process servers. But, whatever this phrase was intended to convey, it cannot mean what HHL contends it means. HHL's proposed construction would eviscerate section 1692i, which specifically governs where debt collection actions must be filed. While Rule 4:3-2 might permit HHL to file this lawsuit in Middlesex County,[6] its provisions cannot be enforced in a manner that would contravene federal law. U.S. Const. art. VI, cl. 2; Sprietsma v. Mercury Marine, 537 U.S. 51, 64-65, 123 S.Ct. 518, 527, 154 L.Ed.2d 466, 478-79 (2002); Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). See Martinez, supra, 867 F.Supp. at 1501 (section 1692i "preempts state law venue provisions"); Harrington v. CACV of Colo., L.L.C., 508 F.Supp.2d 128, 133-34 (D.Mass.2007).

III
In summary, we conclude that 15 U.S.C.A. § 1692i required that the underlying debt collection action be filed in Essex County, or in Brooklyn, and HHL violated the Act by filing the action in Middlesex County. We will not further address the merits of Fogel's claims against HHL, including his claims for injunctive relief, damages and counsel fees; nor will we address HHL's possible defenses to those claims. Those issues were not adjudicated by the trial court and we decline to address them for the first time on appeal. We vacate the October 15, 2007 orders granting summary judgment in favor of HHL and denying summary judgment to Fogel, and we remand this matter to the trial court for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Fogel did not file a motion for a change of venue, as permitted by Rule 4:3-3(b), but neither did HHL voluntarily move to change venue. See Canady v. Wisenbaker Law Offices, P.C., 372 F.Supp.2d 1379, 1384 (N.D.Ga. 2005).
[2] "[A] debt collector violating the Act is liable for actual damages, plus costs and reasonable attorney's fees, as well as any other damages not exceeding $1,000 found appropriate by a trial court. See § 1692k(a). Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages. However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its `violation [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.' § 1692k(c)." Russell v. Equifax A.R.S., 74 F.3d 30, 33-34 (2d Cir.1996).
[3] Although neither party has provided us with the moving papers, we infer that HHL also filed a motion for summary judgment on the underlying loan debt, because the judge entered a third order, dated October 15, 2007, granting judgment for Rutgers on the debt. Fogel has not appealed from that judgment and Rutgers has not participated in this appeal. We therefore do not address the validity of the money judgment in favor of Rutgers.
[4] See also 1 New Jersey Practice, Court Rules Annotated, Comment on R. 1:33-2 (John H. Clock) (5th ed. 1999).
[5] While Fogel equivocated about the location where he signed the contract, for purposes of the summary judgment motion he did not deny that he signed it in Essex County.
[6] We need not address whether Rutgers' cause of action arose in Middlesex County, assuming payment was to be made to Rutgers in New Brunswick, or whether it arose in Essex County because the contract was signed there.