915 A.2d 1

ROCHELLE HODGES AND RENITA HODGES, PLAINTIFFS–RESPONDENTS, v. SASIL CORPORATION, SOTNAS GARDEN APARTMENTS CORPORATION, ROSALIE C. SCHECKEL, ESQ., 100 CHADWICK AVENUE, L.L.C. AND ALFONSO SANTOS, DEFENDANTS, AND FEINSTEIN, RAISS, KELIN & BOOKER, L.L.C., DEFENDANT–APPELLANT.

Argued September 25, 2006—Decided January 31, 2007.

*Gary D. Gordon,* argued the cause for appellant (*Feinstein, Raiss, Kelin & Booker,* attorneys; *Mr. Gordon* and *Tracey Goldstein,* on the briefs).

*César E. Torres,* argued the cause for respondents (*Edna Y. Baugh,* President, Essex–Newark Legal Services, attorney).

*Charles X. Gormally,* argued the cause for amicus curiae New Jersey Apartment Association (*Wolf, Block, Schorr & Solis–Cohen,* attorneys; *Mr. Gormally* and *Sean A. Smith,* on the brief).

*David G. McMillin,* argued the cause for amicus curiae Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney; *Mr. McMillin, Mr. Miller* and *Joseph Harris David,* on the brief).

*Jenny–Brooke Condon,* submitted a brief on behalf of amicus curiae New Jersey HUD Tenant's Coalition (*Ms. Condon* and *Linda E. Fisher,* attorneys).

*Wayne J. Positan,* President, submitted a brief on behalf of amicus curiae New Jersey State Bar Association.

Justice ZAZZALI delivered the opinion of the Court.

Plaintiffs, two sisters living in separate, federally-subsidized apartments, were regularly behind on their rent. Their missed rental payments prompted the filing of several summary dispossess actions seeking eviction. The summonses and complaints, prepared by the landlord's attorneys, labeled the total amount due and owing—the actual monthly rental obligation, late charges, attorneys' fees, and miscellaneous fees—as "rent." The complaints did not advise plaintiffs that in order for them to avoid eviction, they were required to pay only the statutorily-defined rent rather than all amounts itemized in the pleadings. Therefore, under a mistaken belief concerning their obligations, plaintiffs regularly remitted amounts substantially exceeding the minimum needed to prevent eviction. They then filed suit, claiming that the law firm's conduct violated the Fair Debt Collection Practices Act (FDCPA, the Act), 15 *U.S.C.A.* §§ 1692e & f. The trial court dismissed that claim against the law firm. The Appellate Division reversed, holding that law firms regularly engaged in summary dispossess proceedings are subject to the FDCPA's strictures.

In this appeal, we must determine whether a law firm that regularly files summary dispossess actions for nonpayment of rent

may be considered a "debt collector" under the FDCPA, 15 *U.S.C.A.* §§ 1692 to 1692o. Based on the Act's broad statutory language, we hold that a law firm that regularly files summary dispossess actions for nonpayment of rent is a "debt collector" under the FDCPA. Our holding furthers the congressional intent of eliminating abusive debt collection practices and provides low-income tenants with the essential protections to which they are entitled.

I.

Because this matter is before the Court following defendant's successful motion for summary judgment, we review the facts in the light most favorable to plaintiffs, the non-moving party. *See R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.2d* 146 (1995).

Plaintiffs, Renita Hodges (Renita) and Rochelle Hodges (Rochelle), are sisters who reside in separate apartments in Newark's Sotnas Garden Apartments operated by defendant Sasil Corporation (Sasil). Their rent is subsidized by the United States Department of Housing and Urban Development, commonly referred to as Section 8 rental assistance, 42 *U.S.C.A.* § 1437f. Each plaintiff's rental obligation is defined by federal law as thirty percent of her adjusted monthly household income. 42 *U.S.C.A.* § 1437a(a)(1); 24 *C.F.R.* § 5.601 (2001).

Plaintiffs signed identical rental agreements requiring monthly payment of rent for the use of their respective apartments. Although the lease agreements are somewhat unclear, they define "additional rent" as all late charges, reasonable attorneys' fees, and court costs incurred by Sasil as a result of plaintiffs' failure to comply with the agreements. The leases empower Sasil to terminate the agreements for the "non-payment of rent," but not "for failure to pay late charges."

Plaintiffs were regularly in arrears on rent, and thus accrued late charges, attorneys' fees, and court costs under their

leases. Consequently, Sasil's attorneys, Feinstein, Raiss, Kelin & Booker, L.L.C. (Feinstein), a law firm that represents property owners and management companies in summary dispossess proceedings, filed actions seeking plaintiffs' eviction or, alternatively, payment of "rent." Those complaints enumerated all rent, late charges, attorneys' fees, and miscellaneous fees as "rent" owed by plaintiffs. However, in summary dispossess litigation, a landlord may not recover late charges, attorneys' fees, and miscellaneous fees against Section 8 tenants, such as plaintiffs, and, as Feinstein acknowledges, the failure to pay those charges and fees cannot serve as a basis for eviction. *See Hous. Auth. & Urban Redevelopment Agency of Atl. City v. Taylor,* 171 *N.J.* 580, 594, 796 *A.*2d 193 (2002) (holding that federal law prohibits collection of "additional rent" in summary dispossess proceeding from defaulting public housing tenant). The complaints itemized all amounts due and owing, but labeled the total due as "rent." The complaints did not inform plaintiffs that they were required to pay only the statutorily-defined rent to avoid eviction.

With the above as background, we now consider the specific circumstances concerning each plaintiff that gave rise to this dispute.

### Renita Hodges

During the relevant period, Renita lived in her apartment with five children. Her sole income was a $424 monthly welfare payment. Her monthly rent, payable to Sasil, was $55. In October 2003, Feinstein, on Sasil's behalf, sent Renita a "Notice of Termination—Non-payment of Rent" informing plaintiff that her lease would be terminated for "failure to pay rent." The notice stated that Renita owed $251, itemized as $91 for rent, $120 in late fees, and $40 in "AC," which is not defined. Shortly thereafter, Feinstein filed, on Sasil's behalf, a summons and complaint against Renita for nonpayment of rent. The summons read: "The purpose of the attached complaint is to permanently remove you and your belongings from the premises." Further, the summons

prominently stated that "back rent" of $460 was owed. Itemizing the amounts owed, the complaint declared: "There is due, unpaid and owing ... $460.00 for rent...." The $460 debt was composed of the $251 itemized in the notice of termination, plus an additional $30 late fee and $179 in legal fees. Although Renita was statutorily required to pay only her monthly back rent of $91, she nonetheless believed that because all itemized charges were categorized as "rent," payment of the full $460 was required to stave off eviction. As a result, Renita paid Sasil $465, and Feinstein withdrew the complaint.

Renita received a second notice of termination for nonpayment of rent six months later, in April 2004, notifying her that she owed $140, consisting of $110 in rent and $30 in late fees. Rosalie Scheckel, a Feinstein associate, then filed a second summons and complaint against Renita claiming $359 in unpaid "rent," based on $110 in rent, $60 in late fees, and $189 in legal fees. Renita, who was unrepresented, arrived at the courthouse for her trial date with $250, hoping to cure her arrears. Because she waited outside the courtroom in the area where landlords and tenants often settle their disputes informally, Renita missed her trial call, causing a judgment of possession to be entered against her. She then met with a Sasil representative and another Feinstein attorney outside the courtroom. Renita offered payment of $250, a sum that exceeded her then-due statutory rental obligation and was more than sufficient to prevent eviction. However, the Feinstein attorney and Sasil representative refused the offer, instead demanding a new total of $499 and writing "$499 includes June" at the top of the complaint. Feinstein disputes Renita's allegations, contending that Renita never offered $250 to satisfy her arrears.

After a warrant of removal was issued, Renita filed an order to show cause seeking to set aside the judgment of possession. At the hearing on the order to show cause, where Renita was represented by Essex–Newark Legal Services, the court dismissed the complaint upon Renita's payment of $249—not the $499 demanded by Sasil and Feinstein.

Most recently, in October 2004, Sasil sent Renita a third notice of termination for nonpayment of rent. Another summons and complaint was served on Renita documenting a total of $165 in back rent and $619 in non-rent charges, including $210 in late charges, $349 in legal fees, and $60 in "AC." Renita "ran around trying to get the money together" and paid Sasil $600. Even though Renita's payment exceeded the amount due to prevent eviction, Feinstein did not withdraw the complaint.

### Rochelle Hodges

Rochelle's predicament was similar. Rochelle, who resided with her six children, had a monthly income of a $632 welfare payment and was required to pay $119 in monthly rent to Sasil. In 2002, Sasil sent Rochelle a notice of termination for nonpayment of rent, advising her that she owed $113, consisting solely of one charge for legal fees. Worried that her family would be evicted, Rochelle paid Sasil $113. In 2004, Rochelle received a second notice of termination for nonpayment of rent from Sasil, stating that Rochelle owed $466, itemized as $131 in rent, $188 in "stipulation," and $147 in legal fees. Subsequently, Feinstein, on Sasil's behalf, filed a summons and complaint against Rochelle, claiming "rent" of $497, consisting of $336 in legal fees, $30 in late fees, and $131 in rent. At a hearing, at which Rochelle was represented by Essex–Newark Legal Services, counsel stipulated that the rent due and owing was $207, plus $29 in court costs, for a total of $236. Rochelle remitted $236 and Sasil's attorney provided a receipt confirming her "rent balance" of "$0.00."

In late 2004, Sasil sent Rochelle a third notice of termination for nonpayment of rent, this time stating that she owed $475, itemized as $239 in legal fees, $50 in rent, $176 in "stipulation," and $10 in "AC." Rochelle believed that, other than the $50 in rent, Sasil dropped all other charges at the court proceeding earlier that year.

Plaintiffs now allege that the summary dispossess complaints were filed to induce them to believe they would be evicted unless

they paid all enumerated charges, including amounts exceeding their statutorily-defined rental obligation. Accordingly, they commenced an action against defendants Sasil, Feinstein, Scheckel, and Sotnas Garden Apartments Corporation (whom plaintiffs later voluntarily dismissed). Plaintiffs argue that Sasil and Feinstein, by labeling late charges and legal fees as "rent," violated the Brooke Amendment to the United States Housing Act, 42 *U.S.C.A.* § 1437a(a)(1), and, by seeking to collect those sums in eviction proceedings, violated the New Jersey Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1a, and case law, *Cmty. Realty Mgmt., Inc. v. Harris*, 155 *N.J.* 212, 714 *A.2d* 282 (1998). Plaintiffs also assert violations of the FDCPA, 15 *U.S.C.A.* §§ 1692 to 1692o, the New Jersey Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –156, and federal statutory and regulatory requirements governing the calculation of rent.

Before discovery, the trial court granted defendants' motion for summary judgment, dismissing all counts against Scheckel and dismissing all counts, except the CFA claim, against Sasil and Feinstein. Plaintiffs filed a motion for leave to appeal the dismissal of the FDCPA claim, which the Appellate Division granted. The Appellate Division then reversed the dismissal of the FDCPA count against Feinstein. *Hodges v. Feinstein, Raiss, Kelin & Booker, L.L.C.*, 383 *N.J.Super.* 596, 615, 893 *A.2d* 21 (App.Div. 2006). This Court granted Feinstein's motion for leave to appeal. 186 *N.J.* 598, 897 *A.2d* 1055 (2006). We permitted amicus curiae briefs to be filed by Legal Services of New Jersey, the New Jersey Apartment Association, the New Jersey HUD Tenants' Coalition, and the New Jersey State Bar Association.

## II.

Feinstein argues that the law firm is not a debt collector pursuant to the FDCPA. Feinstein asserts that the purpose of summary dispossess actions in New Jersey is to regain possession of leased premises and not to collect money, evidenced by the fact that only judgments of eviction can be ordered in such proceed-

ings. Feinstein further contends that the FDCPA should not apply in these circumstances because the Act would disrupt the summary dispossess process. Specifically, Feinstein iterates that the Act's application will chill pre-trial settlement and create docket backlog, undermining the expedited nature of eviction proceedings.

Plaintiffs maintain that summary dispossess litigation is inherently coercive because one of its purposes is to collect the charges contained in the summons and complaint. That purpose is reflected in both the process utilized and the result obtained. In respect of the process, plaintiffs argue that the threat of eviction used to effectuate the payment of all owed charges is the type of abusive conduct the FDCPA seeks to prevent. Concerning the outcome, plaintiffs argue that payments made by defaulting tenants demonstrate that summary dispossess actions are an effective, albeit indirect, method of collecting back rent and other claimed debts.

In the following analysis, we first discuss the standard of review and then describe the nature of summary dispossess proceedings in New Jersey. We next examine the FDCPA's plain language to determine whether a law firm that regularly files summary dispossess actions is a "debt collector" under the Act. We then consider defendant's arguments against application of the Act in the summary dispossess context. Finally, we refer the matter to our Special Civil Part Practice Committee for consideration of appropriate recommendations consistent with this opinion. Pending any recommendations from that Committee, we provide interim guidance to courts, litigants, and their attorneys.

### III.

#### A.

In respect of the legal issue presented, that is, whether the FDCPA applies to law firms regularly engaged in summary dispossess actions, the Appellate Division's statutory interpreta-

tion is reviewed de novo. *See Balsamides v. Protameen Chems. Inc.*, 160 *N.J.* 352, 372, 734 *A.*2d 721 (1999) ("[M]atters of law are subject to a de novo review.") (formatting omitted).

## B.

The New Jersey summary dispossess statute, enacted in 1847, affords landlords "an expedited procedure to regain possession of leased premises, thereby avoiding the delays ordinarily associated with common-law ejectment actions." *Hous. Auth. of Morristown v. Little*, 135 *N.J.* 274, 280, 639 *A.*2d 286 (1994) (citing *Hous. Auth. of Newark v. West*, 69 *N.J.* 293, 300, 354 *A.*2d 65 (1976); *Vineland Shopping Ctr., Inc. v. De Marco*, 35 *N.J.* 459, 462, 173 *A.*2d 270 (1961)). One of several statutory grounds permitting a summary dispossess action is nonpayment of rent. *N.J.S.A.* 2A:18–53(b). Possession of the premises is the only available remedy for nonpayment of rent, because money damages may not be awarded in a summary dispossess action. *Little, supra,* 135 *N.J.* at 280, 639 *A.*2d 286. If the rent owed is paid "on or before entry of judgment," the legal proceeding is terminated. *N.J.S.A.* 2A:18–55; *accord N.J.S.A.* 2A:42–9; *see, e.g., Little, supra,* 135 *N.J.* at 281, 639 *A.*2d 286.

Summary dispossess actions permit landlords to secure performance of rental obligations. *Little, supra,* 135 *N.J.* at 281, 639 *A.*2d 286. However, a landlord may not evict a tenant for failure to pay tangential fees such as late charges, attorneys' fees, or costs unless the lease provides that such fees are collectable as rent. *Harris, supra,* 155 *N.J.* at 242, 714 *A.*2d 282. A landlord's ability to evict is further circumscribed when a tenant's rent is federally subsidized, as here. Because "rent" is statutorily defined for Section 8 tenants, 42 *U.S.C.A.* § 1437a(a)(1), Section 8 tenants can only be evicted for nonpayment of rent as defined by federal law, not as defined pursuant to a rental agreement.

## IV.

The issue in this appeal is whether a law firm that regularly engages in summary dispossess actions for nonpayment of rent is

a "debt collector" under the FDCPA. Congress enacted the FDCPA in 1968 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 *U.S.C.A.* § 1692(e); *accord* S.Rep. No. 95–382, at 1–2 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696 (stating FDCPA's purpose is to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices"). Designed "to have a broad remedial scope," *Hamilton v. United Healthcare of La., Inc.*, 310 *F.*3d 385, 392 (5th Cir.2002) (citations omitted), the Act protects consumers, or "natural person[s] obligated to . . . pay any debt," 15 *U.S.C.A.* § 1692a(3), by creating procedural mandates for debt collection and prohibiting objectionable debt collection practices. Notably, the FDCPA prohibits a debt collector from, among other conduct, using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 *U.S.C.A.* § 1692e, and using "unfair or unconscionable means to collect or attempt to collect any debt." 15 *U.S.C.A.* § 1692f.

### A.

In resolving whether a law firm that regularly engages in summary dispossess litigation may be a debt collector under the FDCPA, we first must determine what constitutes a "debt." *See Hawthorne v. Mac Adjustment, Inc.*, 140 *F.*3d 1367, 1371 (11th Cir.1998); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 *F.*3d 86, 88 (4th Cir.1994); *Zimmerman v. HBO Affiliate Group*, 834 *F.*2d 1163, 1167 (3d Cir.1987). "Debt" is defined in the FDCPA as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

[15 *U.S.C.A.* § 1692a(5).]

When interpreting a statute, the Legislature's intent is paramount and, generally, the statutory language is the best indicator of that intent. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). Statutory words are ascribed their ordinary meaning and are read in context with related provisions, giving sense to the legislation as a whole. *Ibid.* This Court's duty is clear: "construe and apply the statute as enacted." *Ibid.* (quoting *In re Closing of Jamesburg High Sch.,* 83 *N.J.* 540, 548, 416 *A.*2d 896 (1980)).

We begin with the Act's plain and expansive language. *See Wright v. Fin. Serv. of Norwalk, Inc.,* 22 *F.*3d 647, 650 (6th Cir.1994) (noting FDCPA's broad language). The FDCPA defines "debt" as "any obligation ... to pay money arising out of a transaction ... primarily for personal, family, or household purposes." 15 *U.S.C.A.* § 1692a(5). That definition is not "beset with internal inconsistencies [or] burdened with vocabulary that escapes common understanding." *Hamilton, supra,* 310 *F.*3d at 391 (quotations omitted). Rent, generally defined as "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property," *Black's Law Dictionary* 1322 (8th ed. 2004), squarely comports with the FDCPA's definition of "debt" when it is paid for residential purposes, as here.

That finding is consistent with federal precedent. Courts have observed that "rent clearly fits the definition of debt embodied in the FDCPA." *Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,* No. 94–5756, 1995 *WL* 704778, *3, 1995 *U.S. Dist. Lexis* 17804, *9 (E.D.N.Y. Nov. 16, 1995) (citing *Emanuel v. Am. Credit Exch.,* 870 *F.*2d 805 (2d Cir.1989)); *see also Romea v. Heiberger & Assocs.,* 163 *F.*3d 111, 115 (2d Cir.1998) (holding that back rent is debt under the FDCPA). Other courts assume that the FDCPA encompasses rent without directly addressing whether overdue rent on a residential lease is a "debt." *See, e.g., Long v. Shorebank Dev. Corp.,* 182 *F.*3d 548, 559–60 (7th Cir.1999) (allowing evicted tenant's FDCPA claims against attorney to proceed); *Brady v. Credit Recovery Co.,* 160 *F.*3d 64, 65 (1st Cir.1998)

(reversing summary judgment of FDCPA claims against landlord's collection agent); *Poirier v. Alco Collections, Inc.,* 107 *F.*3d 347, 351 (5th Cir.1997) (landlord's collection agent violated FDCPA by attempting to collect unpaid rent); *Daniels v. Baritz,* No. 02–7929, 2003 *WL* 21027238, *10, 2003 *U.S. Dist. Lexis* 7707, *28–*29 (E.D.Pa. Apr. 30, 2003) (denying motion to dismiss tenant's FDCPA claim against attorneys). *But see Barstow Rd. Owners, Inc. v. Billing,* 179 *Misc.*2d 958, 687 *N.Y.S.*2d 845, 852 (Dist.Ct.1998) (declining to apply FDCPA to nonpayment summary proceeding).

Because of the FDCPA's broad definitional language, we agree with the overwhelming majority of federal courts that apply the FDCPA to situations concerning the collection of rent. We add only that there is support for the federal position at the state level as well. *See, e.g., Eina Realty v. Calixte,* 178 *Misc.*2d 80, 679 *N.Y.S.*2d 796, 798 (Civ.Ct.1998) (noting that "unpaid 'rent' is a 'debt', as the term is defined in 15 *U.S.C.[A].* § 1692a(5) of the FDCPA"); *Pache Mgmt. Co. v. Lusk,* No. 96APE10–1302, 1997 *WL* 254096, *4–*5, 1997 *Ohio App. Lexis* 2104, *9–*15 (Ct.App. May 15, 1997) (concerning deceptive debt collection practices regarding unpaid rent under FDCPA); *cf. Reid v. Ayers,* 138 *N.C.App.* 261, 531 *S.E.*2d 231, 234 (2000) (addressing whether homeowners' association dues are rent and noting that "nearly every court, state or federal, that has considered the issue has concluded that association dues, assessments, and rent are properly classified as debt").

### B.

With the FDCPA's threshold inquiry satisfied, we now must determine whether Feinstein may be a debt collector under the Act. The FDCPA defines "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 *U.S.C.A.* § 1692a(6). For Feinstein and other law firms engaged in summary dispossess actions to be debt collectors, the filing of a

summary dispossess action for nonpayment of rent must be either a direct or an indirect attempt to collect debt.

Interpreting the Act's plain language, the United States Supreme Court unanimously held that litigating attorneys who regularly attempt to collect debts are subject to the FDCPA. *Heintz v. Jenkins,* 514 *U.S.* 291, 292, 115 *S.Ct.* 1489, 1490, 131 *L.Ed.*2d 395, 398 (1995); *see also Piper v. Portnoff Law Assocs.,* 396 *F.*3d 227, 232 (3d Cir.2005) (finding attorneys regularly engaged in debt collection litigation subject to FDCPA). The Court relied on two "rather strong reasons" in reaching that conclusion. *Heintz, supra,* 514 *U.S.* at 294, 115 *S.Ct.* at 1490, 131 *L.Ed.*2d at 399. First, the Court emphasized the FDCPA's broad language, observing that, in "ordinary English," the Act's definition applies to attorneys who attempt to obtain payment of consumer debts through legal proceedings. *Id.* at 294, 115 *S.Ct.* at 1491, 131 *L.Ed.*2d at 399 (citing *Black's Law Dictionary* 263 (6th ed. 1990) (definition of "collect")). Second, an earlier version of the FDCPA expressly exempted attorneys from the Act's scope. *Ibid.* (citing Pub. L. 95–109, § 803(6)(F), 91 Stat. 874, 875). However, as the Court in *Heintz* noted, Congress repealed the exemption in 1986, indicating a legislative intent to subject attorneys to the FDCPA. *Id.* at 294–95, 115 *S.Ct.* at 1491, 131 *L.Ed.*2d at 399.

The Supreme Court's holding in *Heintz* is reinforced by recent Congressional action. During the pendency of this appeal, Congress amended the FDCPA by enacting Pub.L. 109–351. Specifically, Congress precluded "formal pleading[s] in a civil action" from being treated as an "initial communication" for purposes of the Act's procedural safeguards, known as the validation notice requirements. *See* 15 *U.S.C.A.* § 1692g(d). That amendment, which carves out a narrow exemption for attorney work-product, evinces a legislative recognition that the FDCPA applies to attorneys. By expressly excluding legal pleadings from one portion of the FDCPA, Congress tacitly reaffirmed the applicability of the remainder of the Act's substantive provisions to law firms engaged

in debt collection. *See Heintz, supra,* 514 *U.S.* at 292, 115 *S.Ct.* at 1490, 131 *L.Ed.*2d at 398.

Importantly, the amendment reversed precedent holding that pleadings may be an initial communication under the FDCPA. *See, e.g., Thomas v. Law Firm of Simpson & Cybak,* 392 *F.*3d 914, 918 (7th Cir.2004) (holding that pleadings are initial communication under FDCPA). By leaving *Heintz* untouched, the recent amendment to the FDCPA reveals congressional intent to apply the Act to attorneys.

Feinstein, however, argues that attorneys engaged in summary dispossess actions are not debt collectors because the litigation is designed to recover possession, not rent. To be sure, summary dispossess actions were historically viewed as remedies that sought possession of the premises. Chief Justice Weintraub wrote that the summary dispossess statute's "purpose was to give the landlord a quick remedy for possession." *Vineland Shopping Ctr., supra,* 35 *N.J.* at 462, 173 *A.*2d 270. That perspective is reflected in the statutory title, "Summary Actions for Recovery of Premises." *See West, supra,* 69 *N.J.* at 305, 354 *A.*2d 65. Additionally, as previously noted, the sole remedy available in a summary dispossess proceeding is possession, not money damages. *Little, supra,* 135 *N.J.* at 280, 639 *A.*2d 286.

We do not question the legislative intent to provide landlords a remedy of expedited possession. However, in practice, the summary dispossess action is also a powerful debt collection mechanism. Indeed, this Court has explicitly stated that "the summary proceeding is designed to secure performance of the rental obligation." *Vineland Shopping Ctr., supra,* 35 *N.J.* at 469, 173 *A.*2d 270; *accord Little, supra,* 135 *N.J.* at 280–81, 639 *A.*2d 286 (noting summary dispossess procedure secures performance of rental obligation); *see also N.J.S.A.* 2A:18–55 (permitting tenant to remit back rent to halt eviction proceedings); *N.J.S.A.* 2A:42–9 (same).

The facts of this appeal demonstrate that summary dispossess litigation is an effective—and at times coercive—mechanism for collecting rent and other fees. The litigation's dual objectives of

collecting rent and evicting tenants are reflected in the language of Feinstein's summonses and complaints, which simultaneously inform plaintiffs that the complaint's "purpose ... is to permanently remove you ... from the premises" and that rent is "due, unpaid and owing." The realities are even more telling. During oral argument, Feinstein's counsel estimated that approximately one half of all summary dispossess proceedings result in tenants remitting owed rent to stave off eviction. And, on every occasion in which Sasil, through Feinstein, commenced summary dispossess proceedings against plaintiffs, the Hodges sisters uniformly remitted back rent and often remitted amounts exceeding the minimum needed to prevent eviction.

In *Romea, supra,* the United States Court of Appeals for the Second Circuit rejected Feinstein's argument that summary dispossess actions are not debt collection because such litigation seeks possession of the premises. 163 *F.*3d at 116. The court stated that the notice, which served as a statutory condition precedent to a summary dispossess action, was not "mutually exclusive with debt collection" and was "at least in part to induce [the tenant] to pay the back rent [ ] allegedly owed." *Ibid.* Feinstein correctly indicates that the New York summary dispossess law at issue in *Romea,* unlike New Jersey law, permits a landlord to recover both possession and unpaid rent, *see ibid.,* but we do not find that distinction dispositive because it elevates form over substance. Whether the available remedy in a summary dispossess action is possession, damages, both, or some other result, is of little consequence. The nature of the threat employed to garner payment does not alter the fundamental fact—the reality—that a debt collection is attempted. *See Hairston v. Whitehorn & Delman,* No. 97–3015, 1998 *WL* 35112, 1998 *U.S. Dist. Lexis* 819, *7–8 (S.D.N.Y. Jan. 30, 1998).

Often, an implicit, if not overt, goal in summary dispossess actions—an objective repeatedly achieved by Feinstein—is the securing of payment of back rent. The tenant and landlord understand the summons and complaint to be a demand for

payment of rental arrears, a demand that prompts defaulting tenants to pay owed rent and frequently, as alleged here, coerces those tenants to pay additional fees unnecessary to prevent eviction. *See Hodges, supra,* 383 *N.J.Super.* at 605, 893 *A.2d* 21 (noting that complaints "were pled in such a manner as to lead plaintiffs to believe they had to pay the full amount of rent plus extraneous charges to avoid eviction"). The Appellate Division was "struck by the fundamental unfairness" of such conduct. *Id.* at 614, 893 *A.2d* 21. As New Jersey Legal Services asserts, the consequences of this practice can be particularly devastating when applied to low-income tenants. The economic hardship resulting from even a few extra dollars in late charges and attorneys' fees may substantially impact a family's ability to survive. *See Harris, supra,* 155 *N.J.* at 232, 714 *A.2d* 282 (imputing to landlords leasing subsidized housing knowledge of relative impact of late fees on tenants' budgets).

Application of the FDCPA to law firms regularly engaged in summary dispossess actions furthers the congressional objective underlying the statute—protection of consumers from debt collectors who coerce payment of debts and additional charges. *See Irwin v. Mascott,* 112 *F.Supp.*2d 937, 963 (N.D.Cal.2000). We therefore conclude that a law firm that regularly files summary dispossess actions for nonpayment of rent is a debt collector subject to the FDCPA.

Our holding is equally applicable to individual attorneys. The FDCPA uses the term "any person," 15 *U.S.C.A.* § 1692a(6), a legal term of art encompassing individuals, such as attorneys, and business entities, such as law firms. Moreover, the United States Supreme Court held that the Act applies to "lawyers engaged in litigation," *Heintz, supra,* 514 *U.S.* at 292, 115 *S.Ct.* at 1490, 131 *L.Ed.*2d at 398, further indicating that individual attorneys are subject to the Act.

For such law firms or attorneys to be subject to the FDCPA's provisions, they must "regularly" engage in summary dispossess actions. Because this dispute was decided at the summary judg-

ment stage, we find the record incomplete concerning the regularity of Feinstein's participation in summary dispossess actions. Accordingly, this matter must be remanded for a determination of that question.

## V.

Despite the FDCPA's clear statutory language, Feinstein contends that the FDCPA and our court rules conflict. Defendant argues that our rules, which require a summons and complaint in a tenancy action to be filed between ten and thirty days prior to the trial date, cannot be reconciled with the FDCPA, which provides consumers with a thirty-day debt dispute period under 15 *U.S.C.A.* § 1692g(a). Feinstein also asserts that application of the FDCPA will wreak havoc on the State's summary dispossess process because the Act will discourage pre-trial settlement, thereby frustrating the expedited nature of summary dispossess litigation. We reject both arguments.

### A.

Feinstein argues that the FDCPA should be inapplicable because the Act and our court rules are in conflict. New Jersey landlord-tenant law establishes a timetable for summary dispossess actions. *Rule* 6:2-1 requires that a summons and complaint in a tenancy action must be served at least ten days prior to, but no more than thirty days before, the trial date. However, the FDCPA establishes a thirty-day dispute period within which a consumer may question the validity of a debt. 15 *U.S.C.A.* §§ 1692g(a) & (b). That period commences after the consumer receives an appropriate communication, often the initial communication, from the debt collector. *Ibid.* If the consumer disputes the debt in writing within the thirty-day timeframe, the debt collector "shall cease collection" until verification of the debt is mailed to the consumer. 15 *U.S.C.A.* § 1692g(b). Those provisions permit a consumer to halt debt collection by disputing the debt, but also permit a debt collector to resume collection efforts by verifying

the debt. *See Spencer v. Hendersen–Webb, Inc.,* 81 *F.Supp.*2d 582, 593 (D.Md.1999). Defendant argues that if law firms litigating summary dispossess actions are required to provide § 1692g notice contemporaneously with the summons and complaint, then the FDCPA and *Rule* 6:2–1 conflict because summary dispossess actions are typically scheduled for trial before the expiration of the Act's thirty-day dispute period.

However, the Act's recent amendment eradicated any alleged conflict between the FDCPA and our court rules. Congress amended the FDCPA's validation notice requirements, stating, "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication." 15 *U.S.C.A.* § 1692g(d). Therefore, the summons and complaint cannot trigger a debt collector's notice obligations pursuant to § 1692g. Because the implicated federal and state laws do not make "compliance with both ... a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 *U.S.* 132, 142–43, 83 *S.Ct.* 1210, 1217–18, 10 *L.Ed.*2d 248, 257 (1963), the FDCPA and our court rules do not conflict.[1]

## B.

Defendant further maintains that, in view of the recent amendments, the FDCPA is incompatible with New Jersey law because application of the Act will discourage law firms from pursuing pre-trial settlement of their summary dispossess litigation. Feinstein alleges that prudent attorneys engaged in summary dispossess litigation, who either seek to bypass the Act's procedural requirements or are wary of violating the FDCPA, will opt to not communicate with defaulting tenants prior to trial. That communication embargo, according to Feinstein, will curtail pre-trial

---

[1] The amendment of 15 *U.S.C.A.* § 1692g to exclude legal pleadings from the purview of "initial communication," 15 *U.S.C.A.* § 1692g(d), annuls the Appellate Division's observation that "[a] verified complaint would satisfy the requirements of 15 *U.S.C.A.* § 1692g(a)." *Hodges, supra,* 383 *N.J.Super.* at 613, 893 A.2d 21.

settlement of summary eviction actions. The law firm claims that the corresponding increase in trial proceedings and the resulting docket backlog may prevent litigants from achieving expedited results.

Defendant's contentions, however, do not justify rejection of the Act's clear mandates. As the United States Court of Appeals for the Seventh Circuit aptly noted, "concerns about interfering with litigation are alone insufficient to warrant ignoring the [FDCPA]'s plain language." *Thomas, supra,* 392 *F.*3d at 918; *accord Jenkins v. Heintz,* 25 *F.*3d 536, 539 (7th Cir.1994) ("We should not disregard plain statutory language in order to impose on the statute what we may consider a more reasonable meaning."), *aff'd, supra,* 514 *U.S.* 291, 115 *S.Ct.* 1489, 131 *L.Ed.*2d 395 (1995); *Miah v. Ahmed,* 179 *N.J.* 511, 520, 846 *A.*2d 1244 (2004) ("When the meaning of statutory language is clear and unambiguous, our duty is to enforce the statute as written."); *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002) ("A court may neither re-write a plainly written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of plain language.").

That said, we are mindful of Feinstein's concerns. Accordingly, we refer this matter to our Special Civil Part Practice Committee (Committee) to evaluate summary dispossess proceedings. We direct the Committee to draft, for the Court's consideration, proposed rules to harmonize the FDCPA with the State's summary dispossess process. Landlords and their attorneys, as well as tenants and their counsel, thus will have an opportunity to set forth their positions concerning possible recommendations. The Committee should focus on ensuring that summary dispossess actions remain an efficient mechanism for resolving landlord-tenant disputes. However, the Committee must remain cognizant of the ultimate goal—preventing the victimization of unsophisticated tenants by deceptive debt collectors seeking payment of amounts exceeding the statutory minimums to halt evictions. To

that end, we provide the following comments to guide the Committee's deliberations.

▮▮▮▮▮▮ First, the complaint filed against a defaulting tenant should expressly and conspicuously emphasize the amount the tenant is required to remit to avoid eviction. Accordingly, for Section 8 tenants, such as plaintiffs here, the pleadings should prominently declare that only the payment of rent, as determined by federal law, is required to prevent eviction. For non-subsidized housing tenants, however, the rent required to avoid eviction shall be defined by their lease agreements. Either way, the amount due to prevent eviction should be explicitly itemized in the pleadings and should be limited so as not to include any requests or demands for money to be owed, such as future rent. The clarity we recommend, as amplified by the Committee if necessary, will provide tenants with a comprehensive understanding of the debts they owe and will permit them to make informed decisions as they seek to fulfill payment obligations and utilize the FDCPA's protections.

Second, to provide consistency in summary dispossess proceedings, the Committee should study whether rules governing eviction proceedings shall apply uniformly to all litigants, including landlords and attorneys, regardless of their status as "debt collectors," that is, irrespective of whether they "regularly collect[ ] or attempt[ ] to collect" debts.

We do not presume to have identified in this opinion all relevant circumstances that the Committee should evaluate in making its recommendations. We leave to the Committee's sound judgment and discretion the responsibility of considering salient factors, including the impact on summary dispossess litigants, judicial economy, and other policy considerations in developing recommendations for this Court.

## VI.

We recognize the competing policy objectives embodied in 15 *U.S.C.A.* § 1692g. On one hand, Congress sought to protect

defaulting consumers. The Act's procedural provisions, when triggered, require debt collectors to provide written notice to consumers advising them of the amount of the debt, the creditor's identity, and their right to dispute the debt. *See* 15 *U.S.C.A.* § 1692g(a). Those provisions manifest a congressional intent to provide consumers with clear, complete, and accurate information. On the other hand, recent legislative action evinces a congressional attempt to shield attorneys from the FDCPA's burdensome validation notice requirements. *See* 15 *U.S.C.A.* § 1692g(d) (excluding legal pleadings from scope of "initial communication"). Thus, although litigating attorneys who regularly attempt to collect debts remain subject to the FDCPA's substantive provisions, *see Heintz, supra,* 514 *U.S.* at 292, 115 *S.Ct.* at 1490, 131 *L.Ed.*2d at 398, Congress established a loophole through which such attorneys may avoid the Act's procedural mandates.

 Mindful of those competing concerns, and in order to prevent unnecessary confusion while the Committee deliberates this matter, we offer the following interim instructions to guide courts and litigants navigating the summary dispossess process. Until guidance is received from the Committee and adopted by this Court, we require that the complaints that initiate summary dispossess proceedings be verified in accordance with *Rule* 1:4–7.[2] Specifically, we require that such complaints expressly state the amount of debt owed, the creditor's identity, and that the amount must be paid to the landlord or the clerk before 4:30 p.m. on the day of trial for the case to be dismissed. Further, to provide a modicum of uniformity to our summary dispossess proceedings, the interim requirements shall apply to all landlords, represented or pro se, and regardless of their counsel's status as a "debt collector" under the FDCPA.

---

[2] Verification requires that the pleading party allege facts that are based on personal knowledge and that such allegations be of facts admissible as evidence to which the affiant is competent to testify. *R.* 1:4–7; *Monmouth County Div. of Soc. Servs. v. P.A.Q.,* 317 *N.J.Super.* 187, 193–94, 721 A.2d 738 (App.Div.1998) (citing *R.* 1:6–6), *certif. denied,* 160 *N.J.* 90, 733 A.2d 495 (1999).

This interim requirement is a modest compromise that furthers the competing concerns embodied in the FDCPA's validation notice requirements while imposing a minimal responsibility on landlords and attorneys. By verifying the amount of debt owed and the creditor's identity—two integral components of 15 *U.S.C.A.* § 1692g(a)—we further Congress' goal of providing defaulting consumers with clear information regarding their debt. Correspondingly, by requiring such information to be contained in legal pleadings, attorneys may still avoid the Act's validation notice requirements that are often triggered by an "initial communication."

We add only that attorneys who wish to communicate with tenants before filing suit, and thereby trigger the FDCPA's validation notice provisions, *see* 15 *U.S.C.A.* § 1692g, remain free to do so.

## VII.

In sum, a law firm or attorney that regularly files summary dispossess actions for nonpayment of rent is a debt collector under the FDCPA. We remand for discovery and further proceedings consistent with this opinion to determine whether Feinstein regularly collects debts. Because we are mindful of practical questions that may arise in respect of the implementation of this holding, we refer the matter to the Special Civil Part Practice Committee. In the meantime, we require landlords and their attorneys to adhere to the interim guidance we provide and to initiate summary dispossess proceedings by serving verified complaints on defaulting tenants.

Accordingly, landlords and their attorneys maintain the right to pursue summary dispossess proceedings, but they are subject to our overarching concern that the process must provide protection to those most in need of it—low-income tenants such as the Hodges sisters.

We affirm the judgment of the Appellate Division and remand the matter for further proceedings consistent with this opinion.

Justice LaVECCHIA, concurring in part and dissenting in part.

I disagree with the majority's conclusion that attorneys subject themselves to the requirements of the Fair Debt Collection Practices Act, 15 *U.S.C.A.* §§ 1692 to 1692*o* (FDCPA), on the filing of a complaint in a summary dispossess action. Because our summary dispossess action is not and never was an action to collect a debt, attorneys do not become "debt collectors" by filing summary dispossess actions, no matter how regularly they engage in such practice.

New Jersey's "summary dispossess statute originated in 1847 ... to give the landlord a quick remedy for possession." *Vineland Shopping Ctr., Inc. v. De Marco,* 35 *N.J.* 459, 462, 173 *A.*2d 270 (1961). This Court previously has stated that "[t]he only remedy that can be granted in a summary-dispossess proceeding is possession; no money damages may be awarded." *Hous. Auth. of Morristown v. Little,* 135 *N.J.* 274, 280, 639 *A.*2d 286 (1994). The judgment of possession "is nothing more than a legal sanction for the issuance of a warrant which acts as a legal justification for ... removing the tenant from and putting the landlord into possession of the premises." *Galka v. Tide Water Assoc. Oil Co.,* 133 *N.J. Eq.* 137, 140, 30 *A.*2d 881 (Ch.1943). The current court rules reflect the limited remedy available in a summary-dispossess action and bar litigants from joining any additional claims. *R.* 6:3–4. Thus, if a lawyer properly pleads a summary dispossess action, that lawyer is not engaged in the collection of a debt because the only remedy available is possession, not money damages.

Although I reject the majority's premise that New Jersey attorneys who regularly file summary dispossess actions are "debt collectors" subject to FDCPA penalties and conditions, I applaud the Court's determination henceforth to require that the verified complaint in a summary dispossess action shall "expressly and conspicuously" identify precisely "the amount [of rent] the tenant is required to remit to avoid eviction." *Ante* at 232, 915 A.2d at 13. That added protection improves summary dispossess practice

and procedure. It will curb overreaching by landlords and lawyers who take advantage of uninformed tenants facing ejectment by alleging in the summary dispossess complaint an amount due that is in excess of what is allowed by law to be charged as "rent" and, therefore, is more than must be paid by the tenant to avoid eviction. I, however, would impose that improvement to our summary dispossess process pursuant to this Court's general supervisory interest and constitutional responsibility for fairness in the practice and procedure in our courts, *see N.J. Const.* art. VI, § 2, ¶ 3, rather than basing it on some perceived impetus from the FDCPA. Accordingly, I respectfully concur in part and dissent in part from the judgment of the majority in this matter.

Justice RIVERA–SOTO joins in this opinion.

*For affirmance and remandment*—Justices LONG, ZAZZALI, ALBIN and WALLACE—4.

*Concurring in part; dissenting in part*—Justices LaVECCHIA and RIVERA–SOTO—2.