NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1604-15T2

175 EXECUTIVE HOUSE, L.L.C.,

    Plaintiff-Respondent,

v.

ELESHA MILES,

    Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **March 10, 2017** |
| **APPELLATE DIVISION** |

Argued January 18, 2017 — Decided March 10, 2017

Before Judges Espinosa, Guadagno, and Suter.

On appeal from the Superior Court of New
Jersey, Law Division, Special Civil Part,
Essex County, Docket No. LT-25723-15.

José L. Ortiz argued the cause for appellant
(Essex-Newark Legal Services, attorneys; Mr.
Ortiz, Felipe Chavana, and Amy C. Schwind,
on the briefs).

Bruce E. Gudin argued the cause for
respondent (Ehrlich, Petriello, Gudin &
Plaza, P.C., attorneys; Mr. Gudin, on the
brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Elesha Miles (defendant) appeals an October 29, 2015 judgment

of possession entered in favor of 175 Executive House, L.L.C. (the

landlord) and a November 16, 2015 order that vacated defendant's

Order to Show Cause and affirmed the judgment of possession. We reverse the judgment of possession.

Defendant rents an apartment in East Orange from the landlord. She receives a housing assistance voucher under the State's Rental Assistance Program (S-RAP). N.J.S.A. 52:27D-287.1 to -287.4. Under that program and because she is elderly and disabled, defendant pays twenty-five percent of her adjusted annual income as her share of the rent. The balance of the rent is paid to the landlord by the Department of Community Affairs (DCA), which administers S-RAP. Prior to October 1, 2015, defendant paid $510 per month in rent and DCA paid $775 per month, for a total monthly rent payment of $1,285. After October 1, 2015, when defendant was recertified for participation in S-RAP, she paid $560 per month and DCA's contribution remained the same, for a total monthly rent payment of $1,335. Defendant timely paid her portion of the monthly rent from her social security income.

On August 14, 2015, the landlord filed a summary dispossess action seeking a judgment of possession for nonpayment of rent for the month of August 2015, and citing $1,545 as the amount of rent due and owing. The complaint did not identify defendant as a rent-subsidized tenant.

A judgment of possession was entered by default on September 21, 2015, after defendant did not appear in court because she was

ill. The landlord thereafter submitted a certification in support of the judgment of possession and requested a warrant of removal. In response to a phone call from defendant, the landlord advised defendant by letter that the eviction was based on $1,425 in unpaid attorney's fees, late fees, and court costs (collectively, additional rent), which charges were attributable to an earlier landlord/tenant action against defendant.[1]

Defendant filed an emergent Order to Show Cause to vacate the judgment of possession, and it was temporarily stayed. At the hearing on October 29, 2015, the landlord testified defendant owed $1,400 in additional rent. The landlord's counsel represented, however, that $1,806 in additional rent charges were owed by defendant. Although defendant mentioned that she had a rent subsidy, the judge affirmed the August 14, 2015 judgment of possession without reference to the subsidy, finding that defendant signed a lease, which included provisions for additional rent charges, and that $1,806 was due and owing.

Defendant filed a second Order to Show Cause, which was heard on November 16, 2015. Defendant advised the judge she was

---

[1] The earlier landlord/tenant case was dismissed after defendant agreed to permit access to the apartment for pest control treatments.

receiving a rent subsidy,[2] that she was current on her rent payments and that it was illegal to evict her for additional rent charges when her portion of the monthly rent was paid in full. However, the judge found nothing had changed since the matter was heard in October, and he again confirmed the entry of the judgment of possession. Defendant was locked out of the apartment on November 18, 2015.

On December 11, 2015, defendant appealed the judgment of possession that had been entered on October 29 and November 16, 2015. Before the trial court, she requested an emergent stay of the lockout pending appeal, which was granted on December 18, 2015. The trial court then vacated the judgment of possession, finding that it was improper to evict defendant based on additional rent charges because she received a rent subsidy.

On January 4, 2016, in a subsequent proceeding in the matter, the trial court vacated part of its December 18, 2015 order, finding that to the extent it had vacated the judgment of possession, it had no jurisdiction to do so because of the pending appeal. R. 2:9-1(a). The stay of eviction was continued, and defendant was ordered to continue paying monthly rent.

---

[2] Defendant incorrectly represented that she received assistance under the Section 8 Housing Choice Voucher Program (Section 8 voucher program), 42 U.S.C.A. §§ 1437 to 1437z-9, rather than under S-RAP.

On appeal, defendant contends that the trial court erred in entering a judgment of possession because, as an S-RAP recipient, she could not be evicted based solely upon unpaid additional rent charges. Defendant also contends the landlord failed to meet its burden of proof or to show an entitlement to attorney's fees.[3]

We agree with the trial judge that by the time the matter was before him in January 2016, he had lost jurisdiction to vacate the judgment of possession because defendant had filed an appeal. R. 2:9-1(a). The trial court then had no ability to resolve whether an S-RAP recipient can be evicted based solely on unpaid additional rent charges.

Defendant supports her contentions based upon cases construing the Section 8 voucher program. The landlord contends that S-RAP is sui generis and not subject to the same restrictions, citing to a portion of the State's regulations that allows rent above the payment standard.

We are tasked with deciding whether S-RAP, which "provide[s] rental assistance grants comparable to the federal [S]ection 8 program," N.J.S.A. 52:27D-287.1, is analogous to the Section 8

---

[3] The judgment of possession was based solely upon additional rent charges. Because of our resolution of the issues, we do not decide the validity of the additional rent charges nor whether the attorney's fees were sought consistent with N.J.S.A. 2A:18-16.67.

voucher program in prohibiting the eviction of a tenant solely for non-payment of additional rent charges.

In a summary dispossess action, "[p]ossession of the premises is the only available remedy for nonpayment of rent." Hodges v. Sasil Corp., 189 N.J. 210, 221 (2007). A judgment of possession may be entered if a landlord can prove "one of the statutorily enumerated 'good cause' grounds for eviction." Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005) (citing N.J.S.A. 2A:18-61.1). The nonpayment of rent that is "due and owing under the lease" is good cause for eviction. N.J.S.A. 2A:18-61.1(a). A tenant cannot be evicted for the "failure to pay 'tangential fees' such as 'late charges, attorneys' fees, or costs unless the lease provides that such fees are collectable as rent.'" Hodges, supra, 189 N.J. at 221 (quoting Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 242 (1998)).

Generally, a lease is enforced "as it is written, absent some superior contravening public policy." Hous. Auth. & Urban Redev. Agency v. Taylor, 171 N.J. 580, 586 (2002). Where the eviction involves a tenant in a public housing program, "[d]espite the clear lease provisions, the property . . . is governed by standards different from those applicable to private landlord/tenant relations." Id. at 594 (first alteration in original) (quoting Binghamton Hous. Auth. v. Douglas, 630 N.Y.S.2d 144, 145 (N.Y.

App. Div. 1995)). Eviction based on the non-payment of additional rent may be limited "by rent control ordinances or federal law." Id. at 587 (citing Harris, supra, 155 N.J. at 242).

Under federal statutes and regulations, Congress has "defin[ed] and limit[ed] rent for low-income tenants in federally-subsidized housing programs." Id. at 589. "Central to [the federal] scheme is the Brooke Amendment, which strictly defines rent based on a tenant's income . . . as '30 per centum of the family's monthly adjusted income.'" Ibid. (quoting 42 U.S.C.A. § 1437a(a)(1)).[4] Under the controlling federal scheme, the strict definition of rent cannot be expanded by including additional rent charges as rent. Id. at 593. Our Supreme Court has held that state law, which permits additional rent charges that are expressly referenced in the lease to serve as a ground for eviction for non-payment of rent, is preempted by federal law. Id. at 595.

We applied that holding to the Section 8 voucher program, which is "a federal housing subsidy program created . . . to assist low-income families with affordable housing." Sudersan, supra, 386 N.J. Super. at 249. We saw "no difference" in applying the Court's holding in Taylor, which involved a public housing program,

_____

[4] The Brooke Amendment, 42 U.S.C.A. § 1437a(a)(1), "limits the amount of rent that public housing tenants can be charged." Id. at 252.

to the Section 8 voucher program.  Id. at 253.  "[B]oth [programs] share the same principle of assisting low income families with affordable housing; both set an income limit on the amount of rent collectable by a landlord; and both apply to federally funded providers of housing of last resort."  Ibid.  We reasoned that federal law limited "the amount of rent for which a tenant may be held responsible."  Ibid.

In Sudersan, where the landlord sought to evict based on utility charges, the "effect" was to increase the defendant's portion of the rent.  Id. at 253-54.  We held that "[t]he landlord may not use the terms of its lease to broaden the definition of rent to include utility charges, and to then use this broader definition of rent as a basis for eviction."  Id. at 254.  To do so "would increase tenant rent beyond the limit established by the Brooke Amendment and in excess of the specific portion fixed by the federal housing subsidy program."  Ibid.

Our State rent subsidy program is similar to the Section 8 voucher program.  In 2004, the Legislature amended the Prevention of Homelessness Act (the Act), N.J.S.A. 52:27D-280 to -287, to create a rental assistance program for low-income individuals and households to be established and administered by DCA.  N.J.S.A. 52:27D-287.1.  The Legislature expressly provided that the program established "shall provide rental assistance grants comparable to

the federal [S]ection 8 program" but the program would only be available to State residents who did not then have a federal Section 8 voucher. N.J.S.A. 52:27D-287.1(a). If a resident obtained a Section 8 voucher, their assistance under the State program would terminate.[5] N.J.S.A. 52:27D-287.1(b). In a statement accompanying the original Senate bill, it was observed that "[d]ue to cutbacks in federal funding, the availability of [S]ection 8 vouchers has been severely impacted . . . . Therefore, there is a pressing need for a State rental assistance program for low income residents of our State who are on the brink of homelessness." Senate Cmty. & Urban Affairs Comm., Statement to S. 357 (June 7, 2004). S-RAP became effective on January 7, 2005. L. 2004 c. 140, § 6.

DCA adopted implementing regulations in May 2005. 37 N.J.R. 1775(a) (May 16, 2005); see N.J.A.C. 5:42-1.1 to -7.3. Eligibility was based on federal income guidelines. 37 N.J.R. 165(a) (Jan. 18, 2005). Under the program, the tenant and the landlord enter into a lease. DCA responded to an inquiry in comments to the regulations upon adoption that it did not require any specific form of lease. 37 N.J.R. 1775(a) (May 16, 2005). The tenant is

---

[5] Initially, the Act required that a portion of the grants be reserved for senior citizens who met the income requirements, but the Act was later amended effective in 2008 to include certain veterans.

responsible to pay the family share of rent, which is defined as thirty percent of the household's adjusted annual income, or twenty-five percent for an elderly and disabled head of household. N.J.A.C. 5:42-1.2. The S-RAP subsidy is "the difference between the tenant's rent and the applicable DCA payment standard or the gross rent, whichever is lower." Ibid.; see also N.J.A.C. 5:42-2.8(a)(7) (similarly defining "S-RAP subsidy" in providing instructions on the calculation of the "tenant portion of rent"). The payment standard is the maximum monthly assistance payment for a family assisted in the program. N.J.A.C. 5:42-1.2.

DCA also enters into a contract with the landlord. Under the contract,[6] DCA agrees to make a monthly housing assistance payment to the landlord on behalf of the program participant. That payment is credited by the landlord toward the tenant's monthly rent.

The landlord contends because S-RAP is "comparable," but not "identical," to the Section 8 voucher program, tenants can be subject to summary dispossess actions based on the non-payment of additional rent even if the tenant's portion of the monthly rent has been paid. The landlord offers no practical reason why a participant in the State program should be subject to eviction

[6] The landlord has included a contract for a period of time that predates the eviction at issue. It was not part of the record before the trial court.

while their counterparts in the federal program are not. Both programs limit the tenant's portion of the rent to thirty percent of their income.[7] Both programs "share the same principle of assisting low income families with affordable housing; both set an income limit on the amount of rent collectable by a landlord; and both apply to . . . providers of housing of last resort." Sudersan, supra, 386 N.J. Super. at 253. Moreover, S-RAP was modeled on the federal program. In comment after comment when the regulations were adopted, DCA referenced as a guide the rules under the Section 8 voucher program. 37 N.J.R. 1775(a) (May 16, 2005).

The landlord cites to the regulatory definition of "calculation of family share rent" in support of its position. Although defining rent as "30 percent based upon the household's adjusted annual income," the regulation also provides that "[r]ents above the payment standard may increase the family share above 30 percent." N.J.A.C. 5:42-1.2. Then, in describing the calculation of the tenant's portion of the rent and the subsidy, the regulations define the tenant's portion of the rent as thirty percent of adjusted income "minus the applicable utility allowance[] and the difference between the payment standard and

_____

[7] Or in defendant's case, twenty-five percent based on age and disability.

the contract unit." N.J.A.C. 5:42-2.8(a)(6). The S-RAP subsidy is "the difference between the tenant rent and either the applicable payment standard or contract rent whichever is less." N.J.A.C. 5:42-2.8(a)(7).

Notably, the regulations make no reference to late charges, attorney's fees or court costs as "rent" within any of these definitions. The "payment standard" is the housing assistance payment paid by DCA to the owner up to 110 percent of the fair market rent. If the tenant elects to reside in a residence that has total rent above the "payment standard," the tenant will be responsible to pay this amount.

The landlord is incorrect that this language distinguishes S-RAP from the Section 8 voucher program. The federal regulations similarly provide for tenants to pay rent above thirty percent of adjusted monthly income "where the gross rent of the unit exceeds the applicable payment standard for the family," providing that in such situations, "the family share must not exceed forty percent of the family's adjusted monthly income."[8] 24 C.F.R. § 982.508 (1999). This federal regulation, like the S-RAP regulation, is referencing monthly rent and not additional rent charges and thus, provides no basis to distinguish the programs.

_____

[8] S-RAP does not include this forty percent limit.

The landlord contends the programs are distinguishable because defendant's lease was approved by DCA and allowed for eviction based on the non-payment of additional rent. We observe first that the landlord never introduced at trial the tenant's lease or the landlord's contract with DCA, but has included them in its appendix for the first time on appeal. Even if these are the operative contracts, they do not change the result.

In a summary dispossess action, the landlord must certify that "the charges and fees claimed to be due as rent, other than the base rent, are permitted to be charged as rent by the lease and by applicable federal, state and local law." R. 6:6-3(b). Because the regulations define rent as a percentage of the tenant's income, the lease contravenes these regulations by broadening the definition of rent beyond that percentage.

The situation is no different than in Sudersan, where we concluded that the federal system did not permit additional rent charges to be used for summary eviction because the effect was to increase tenant rent "in excess of the specific portion fixed by the federal housing subsidy program." Sudersan, supra, 386 N.J. Super. at 254. Further, there is no indication that DCA approved the substance rather than the form of the contract, which in any event cannot conflict with the State's regulations.

As such, we hold that a tenant with an S-RAP voucher cannot be evicted for non-payment of rent based solely on the failure to pay additional rent charges under the lease.

The judgment of possession is reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION