OPINION OF THE COURT
Philip S. Straniere, J.
Claimant, Veronica Barry, commenced this small claims action against the defendant, Board of Managers of Elmwood Park Condominium II, alleging that the claimant suffered damages when the defendant violated both the federal Fair Debt Collection Practices Act (FDCPA) and Civil Practice Law and Rules § 5020 when attempting to collect on the judgment awarded to defendant on December 2, 2005 in the matter of Board of Mgrs. of Elmwood Park Condominium II v Barry (SCR 60177/05).
Currently before the court is defendant’s motion to dismiss the action on the grounds that CPLR 5020 and the FDCPA have not been violated. Claimant did not file opposition to defendant’s motion but claimant filed a motion for summary judgment in her favor asserting that there are no triable issues of fact. Defendant has opposed the motion.
Background
*561 On December 22, 2005, Judge DiDomenico, after a trial on the merits, awarded a judgment in favor of the Board of Managers against Barry in the amount of $1,459.90, representing $1,430.11 for unpaid common charges, plus $29.79 disbursements (SCR 60177/05).
On March 14, 2007, the Board caused to be issued an “execution with notice to garnishee” directed to the sheriff and any marshal in the City of New York seeking to enforce the judgment pursuant to CPLR 5232 (a).
On March 20, 2007, Marshal Giachetta served a levy and demand on the Bank of New York and was notified by JP Morgan Chase, the successor bank, that it had captured funds in the amount of $1,750.16 in one of Barry’s accounts.
On March 27, 2007, Barry received a letter from Marshal Giachetta seeking the sum of $1,750.16 to satisfy the judgment in favor of the Board. This amount included the judgment as well as marshal’s fees.
On March 29, 2007, Barry issued a personal check to the marshal in the amount of $1,750.16.
On April 2, 2007, Chase debited Barry’s account to satisfy the levy.
On April 9, 2007, Barry demanded by facsimile transmission a satisfaction from the law office of Howard File.
On April 13, 2007, Giachetta returned Barry’s personal check because he had received an official check from Chase Bank.
On April 16, 2007, Barry sent a letter to the law office of Howard File, counsel to the Board, alleging that the marshal sought to collect the monies twice on April 2, 2007 and that the Board had failed to issue a satisfaction.
On April 17, 2007, Chase sent a letter to Barry notifying her of the payment of the levy.
On May 31, 2007, Giachetta issued a check to Howard File in the amount of $2,321.83 allegedly in satisfaction of the Barry obligation. The court questioned if this is the correct check or whether it contained other monies due to clients of File besides the Barry funds since Giachetta only received $1,750.16 from the bank levy.
On June 7, 2007, counsel for the Board issued “satisfaction of judgment” which was produced in court on June 8, 2007 and delivered to Barry.
*562 Legal Issues
A. Is Claimant Entitled to Penalty for Failure to Timely Receive a Satisfaction?
CPLR 5020 (c) provides:
“When the judgment is fully satisfied, if the person required to execute and file with the proper clerk pursuant to subdivisions (a) and (d) hereof fails or refuses to do so within twenty days after receiving full satisfaction, then the judgment creditor shall be subject to a penalty of one hundred dollars recoverable by the judgment debtor pursuant to Section 7202 of the civil practice law and rules or article eighteen of . . . the New York City civil court act . . .
Defendant Board asserts that it did issue a satisfaction within 20 days of receipt of the payment from the marshal and therefore is not subject to a penalty. The marshal however received the funds from claimant’s bank account in early April. If the marshal is the “agent” of the judgment creditor for collection of the monies, an argument could be made that the 20-day period begins to run from when the marshal received the monies. However, the Marshal Rules promulgated by the Department of Investigation require that the marshal turn over any monies collected within 30 days of receipt. Because the marshal- has 30 days to turn the money over to the judgment creditor, the requirement of CPLR 5020 (c) that the judgment creditor has 20 days to file a satisfaction can only commence when the judgment creditor is in receipt of the monies. It would not make any sense to require the judgment creditor to issue a satisfaction prior to receipt of all of the funds levied upon to satisfy the judgment.
Further, CPLR 5020 (a) states: “Generally. When a person entitled to enforce a judgment receives satisfaction or partial satisfaction of the judgment, he[*] shall execute and file with the proper clerk pursuant to subdivision (a) of section 5021, a satisfaction-piece . . . .” The judgment creditor or its assignee is the person “entitled to enforce a judgment” and not the marshal, so the obligation to file the satisfaction-piece rests with that individual or entity. The 20-day period therefore runs from the date of receipt of the monies by the judgment creditor and not the date the marshal’s levy is paid.
*563 There is a question as to whether or not a satisfaction-piece is even required when the marshal or sheriff is the person collecting on the judgment. CPLR 5021 (b) provides:
“Entry upon return of execution. A sheriff shall return an execution to the clerk of the court from which the execution issued if such execution is wholly or partially satisfied, and the clerk shall make an appropriate entry on his docket of the judgment. The sheriff shall also deliver to the person making payment, upon request, a certified copy of the execution and of the return of satisfaction or partial satisfaction. Upon the filing of such copy with the clerk of the county where the execution was satisfied, such clerk shall enter satisfaction or partial satisfaction.”
The clerk of the court marks the court records satisfied if notified by the sheriff or marshal that the execution has been paid in full. This being the case, what is the purpose of the judgment creditor filing a satisfaction-piece? Because the satisfaction-piece is to be acknowledged in the form required to entitle a deed to be recorded (CPLR 5020 [a]), the satisfaction-piece may be recorded with the county clerk as “satisfied” in the judgment book, as opposed to merely being reflected on the records of the court rendering the judgment. This process is necessary so that title to any real property which may be encumbered by a judgment may be cleared.
Based on the foregoing, claimant’s allegation that she is entitled to damages pursuant to CPLR 5020 (a) must be denied. Defendant Board delivered a satisfaction-piece to the claimant within 20 days of receipt of the funds collected by the marshal.
B. Did Defendant Violate the Fair Debt Collection Practices Act (15 USC § 1692 et seq.)l
Claimant contends that the Fair Debt Collection Practices Act (15 USC § 1692 et seq.) applies to this transaction and that the defendant failed to comply with that law. There do not appear to be any reported cases in New York concerning the application of the FDCPA to condominium association charges.
Section 1692a contains certain definitions that are applicable to debt collection activities:
“(3) The term ‘consumer’ means any natural person obligated or allegedly obligated to pay any debt.
“(4) The term ‘creditor’ means any person who offers or extends credit creating a debt or to whom a *564 debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.
“(5) The term ‘debt’ means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.
“(6) The term ‘debt collector’ means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
“(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; . . .
“(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement. . . .”
Somehow I think that Adams, Jefferson and Madison must be turning over in their graves at the thought that the federal government is regulating such a local activity as the collecting of condominium association dues between the homeowner and the association. The trend in cases has been to expand the FD-CPA to cover the collection of condominium association dues.
In general, a condominium or homeowners’ association contracts with a private company to manage the daily affairs of *565 the association. One of the many functions of the management company is to bill the unit owners for common charges, dues and assessments levied by the board of directors of the association. There are of course many smaller condominiums and associations that handle all of these tasks without hiring outside management. It is only when the association is unsuccessful in obtaining payment of these unit obligations that counsel is retained to pursue the matter in court. In New York, a corporation, such as a condominium, must appear by counsel in all litigation (CPLR 321 [a]), although there is an exception for small claims actions where appearance by counsel is not required (NY City Civ Ct Act §§ 1809, 1809-A).
1. Are Condominium Dues a “Debt” under the FDCPA?
As stated above, the FDCPA defines a “debt” as “any obligation ... of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services . . . are primarily for personal, family, or household purposes” while a “consumer” is “any natural person obligated or allegedly obligated to pay any debt” (15 USC § 1692a [5], [3]).
Real Property Law article 9-B governs the formation and obligations of condominiums and the unit owners. Real Property Law § 339-e (3) defines “common charges” as “each unit’s proportionate share of the common expenses” in accordance with its common interest (emphasis added). “Common expenses” are defined as “(a) Expenses of operation of the property, and (b) All sums designated common expenses by or pursuant to the provisions of this article, the declaration or the by-laws” (Real Property Law § 339-e [4]). Real Property Law § 339-i discusses the rights and obligations that arise from the existence of “common elements.” This statute provides:
“1. Each unit shall have appurtenant thereto a common interest as expressed in the declaration. . . .
“2. The common interest appurtenant to each unit as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all unit owners affected, expressed in an amended declaration.” (Id. [emphasis added].)
The New York Legislature helped to further define the nature of the obligation when it created a “lien for common charges” (Real Property Law § 339-z). The statute provides: “The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof’ (id.). This law leads to two conclusions. The first is that the obligation for *566 common charges is a lien against the unit and not an individual obligation. The obligation for payment exists irrespective of ownership of the unit. The second is that a fiduciary relationship exists between the board of managers and all of the unit owners to insure that every unit is in compliance with its statutory duty to pay the common charges. Real Property Law § 339-z states that “[u]pon the sale or conveyance of a unit, such unpaid common charges shall be paid out of the sale proceeds or by the grantee.” Additionally, Real Property Law § 339-aa holds that “nothing contained herein shall affect or impair or release the unit from the lien for such common charges” (emphasis added). This further supports the conclusion that the common charges run with the unit and are not a debt incurred by the unit owner. Because the common charges are a lien against the unit, they must be paid from the proceeds of the sale. If this were an individual’s obligation, the common charges would not be a lien required to be paid from the sale proceeds. The law would permit the seller to pay the amount from the seller’s own assets. Likewise, the statute in the alternative permits payment of the lien by the grantee because the unpaid charges are a lien which would adversely affect title to the unit. If the obligation was a “debt” and not a “lien” it would not have to be satisfied in this manner and as each unit was sold, an obligation to pay would commence in the new owner, with the condominium being required to collect past due charges from the seller exclusively.
The New York statutory scheme requires all unit owners to comply with the bylaws, rules, regulations, resolutions and decisions adopted thereto (Real Property Law § 339-j). A failure to comply with any of these subjects the offending unit owner to legal action undertaken on behalf of all of the unit owners.
Real Property Law § 339-x makes it impossible for any unit owner to be exempt from payment of common charges by waiving the use or enjoyment of the common elements or by abandoning the unit. The only way to avoid common charges is to surrender the unit and all interests in the common elements to the board of managers. In other words, there is no defense to the payment of the common charges. And as set forth above, it appears that the board of a condominium does not have to undertake any collection practices to enforce the amount due since the common charges become a lien automatically subject to satisfaction from the sale or foreclosure of the unit. The monthly payment is not “debt”; it is a statutory obligation to pay imposed upon each unit.
*567 2. Is the Common Charge Payment a “Fiduciary” Obligation of Each Unit?
One of the exceptions to the term “debt collector” is “any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation” (15 USC § 1692a [6] [F]). By purchasing a unit in a condominium, each unit owner has by contract and by statute (Real Property Law art 9-B) entered into a fiduciary relationship with every other unit owner. One of the elements of that fiduciary relationship is the obligation to pay common charges irrespective of any disputes that unit owner has with another unit owner or the board of managers, or third parties acting on behalf of the board.
The reason for this is that if each unit owner refuses to pay common charges assessed, the condominium would either cease to exist or other owners would be forced to contribute funds to cover the defaulting member’s obligation so as to keep the condominium viable. By purchasing a unit, each owner is acknowledging this obligation to pay common charges. The benefit is not just for that unit owner but it is for all owners in the condominium (Real Property Law § 339-i). The fact that this is a “fiduciary relationship” is further supported by Real Property Law § 339-z cited above where the statute provides that “[t]he board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof” (emphasis added). While Real Property Law § 339-aa states that “nothing contained herein shall affect or impair or release the unit from the lien for such common charges or impair or diminish the rights of the manager or the board of managers on behalf of the unit owners under this section and section three hundred thirty-nine-z” (emphasis added). This establishes the legislative intent that the common charges are for the benefit of all unit owners and an obligation is owed to the condominium by the unit owner.
Finally, one of the documents executed upon the initial sale of each individual unit is a “power of attorney” in favor of the board of managers which permits the board to act on behalf of the unit owner as to all management issues that arise in the daily activities of the condominium. This power of attorney, like the obligation to pay common charges, runs with the land so that subsequent purchasers of a unit do not have to execute a new power of attorney on each transfer. This power of attorney also establishes a fiduciary relationship between the unit owner *568 and the board, as well as one between all of the unit owners. In regard to the payment of common charges and maintenance of the unit itself, each unit must be operated by the unit owner so as not to diminish the interest of other owners. Each and every unit may either be benefitted or damaged by the actions of any individual unit. This further supports the conclusion that a “fiduciary” relationship exists between each unit owner.
Since there is a fiduciary relationship between each unit owner and all other unit owners, the collection of common charges by the condominium, its managing agent or attorneys acting on its behalf are exempt from the application of the FD-CPA.
3. Is the Board of Managers a “Person” under the FDCPA?
The FDCPA defines the term “creditor” as “any person who offers or extends credit creating a debt or to whom a debt is owed” (15 USC § 1692a [4]). The federal statute does not define who is a “person.” It describes a “consumer” as a “natural person,” but it is silent on who qualifies as a “person.” This requires the application of New York State law to define the term. Real Property Law § 339-e (10) defines “person” as a “natural person, corporation, partnership, association, trustee or other legal entity.” In New York, a condominium may be an unincorporated association, or a corporation formed under the Business Corporation Law or the Not-For-Profit Corporation Law. In this litigation, the defendant condominium is an unincorporated association managed by a board of managers. Under General Associations Law § 12 the president or treasurer of an unincorporated association may maintain an action “for or upon which all of associates may maintain such an action or special proceeding, by reason of their interest or ownership therein, either jointly or in common.” Case law has permitted members of the association to bring an action on behalf of themselves and all other members of the association (McOwen v Boccaccio, 79 AD2d 1098 [1981]). So, although the “association” is a “person” under New York law, it is not a “creditor” under the FDCPA, since the association is not the person extending credit or to whom the debt is owed (15 USC § 1692a [4]). Under New York law the debt is owed to all of the other unit owners and each and every one of them has a right to enforce the claim against any other owner. In fact, it might sound strange, but owing to the unique nature of condominium ownership, the unit owner owes the obligation to pay dues to himself or herself, since the unit derives the benefit of the payment.
*569 C. Contrary Case Law
The history of litigation concerning the application of the FD-CPA to condominium common charge collections reveals that most trial courts dealing with the issue initially found the FD-CPA was not applicable, often on the grounds that there was no “debt” involved since the money was collected monthly for future services or that the obligation ran with the land and was not personal to the unit owner. Later cases, especially federal circuit court decisions, have overruled these lower court findings when they ruled that common charges are “debts” under the statute and rejected the argument that the monies were being paid before the services were rendered (Newman v Boehm, Pearlstein & Bright, Ltd., 119 F3d 477 [1997]). Some of these decisions are based on the interpretation that the required “transaction” to trigger the attachment of the statutory definition of “debt” (15 USC § 1692a [5]) is the purchase of the unit by the unit owner (Ladick v Van Gemert, 146 F3d 1205 [1998]) and that no offer or extension of credit is needed to create the debt (Thies v Law Offices of William A. Wyman, 969 F Supp 604 [1997]). I must respectfully disagree.
The transaction that creates the obligation to pay the common charges is the creation of the condominium, its approval by the attorney general in New York State and the recording of the declaration, covenants and restrictions with the county clerk. Once the condominium offering plan has been approved, the number of units that will be created and the percentage ownership of common elements with the concomitant percentage of common charges to be paid by that unit comes into existence as an obligation. At the creation of the condominium, the sponsor is responsible for all of the expenses based on the sponsor’s ownership of all of the interests. The obligation for payment of the common charges is created when the unit comes into legal existence and not when it is sold to a purchaser. At this point, the triggering transaction has taken place, but there is no “consumer” since there is no “natural person” obligated to make payment (15 USC § 1692a [3]) and there is no “debt” without the existence of a consumer (15 USC § 1692a [5]). Once the condominium is formed the obligation to pay has been established, the only thing that will change is who will be paying the obligation on behalf of the unit.
The administrative rules governing the condominium approved by the attorney general require the sponsor to pay all common charges and assessments with respect to unsold units *570 (13 NYCRR 20.3 [t] [5]; 23.3 [v] [5]). This was done to eliminate “deficiency budget” arrangements that exist in other states and makes the condominium a separate financial entity from the developer from the time that the declaration is filed. This system supports the conclusion that the “transaction” is the formation of the condominium and not the sale of the individual units. Again, the obligation for payment exists irrespective of who is the owner of the unit.
D. Other FDCPA Issues
Even if this court were to agree with the federal courts that have ruled on the issue that the FDCPA was applicable, there are other reasons to dismiss this action.
1. The statute of limitations for commencing an action alleging a violation of the FDCPA is one year (15 USC § 1692k [d]). The action in which the alleged violation occurred was the one commenced by the defendant condominium in small claims court in 2005. Therefore, the collection practice that would be subject to scrutiny arose in 2005 prior to the institution of the small claims action and not by the efforts undertaken to enforce the judgment. The claim of an FDCPA violation arose in 2005 prior to the small claims suit. It had to be brought before the end of 2006. This action was commenced in 2007 and is time-barred.
2. Under the FDCPA the condominium association is not a “debt collector” subject to the act since a debt collector undertakes to collect debts on behalf of another (15 USC § 1692a [6]). The condominium can collect money owed to it without being subject to the FDCPA. Neither is a management company which is hired to manage the day-to-day operations of the condominium community subject to the FDCPA, since the primary purpose of the company is to engage in services unrelated to the collection of association dues. The act would only be applicable to the management company if a substantial part of the services rendered was collection of common charges (Alexander v Omega Mgt., Inc., 67 F Supp 2d 1052 [1999]). The only party who might be subject to the FDCPA would be counsel for the condominium and then only if counsel’s principal business is collection of debt or regularly collects debts for another (Blakemore v Pekay, 895 F Supp 972 [1995]). There is no showing by claimant that the law firm bringing this litigation regularly engages in the debt collection business. In addition, if counsel did not send any letters attempting to collect the debt or commence litigation on behalf of the client, but only appeared in court to represent the *571 condominium, the FDCPA does not apply. Therefore, claimant has sued the wrong party. The condominium is exempt from the FDCPA since it is originating the debt. The issue of the lawyer’s role is apparently completely avoided by having the condominium commence the action “pro se” in small claims court. Because a corporation and voluntary association can only appear by attorney in an action or proceeding (CPLR 321 [a]), requiring counsel for the corporation to comply with the FD-CPA places an additional unfair burden on those entities which does not exist for a natural person.
3. Claimant’s allegations as to violation of the FDCPA arise from the enforcement efforts undertaken by the marshal after a valid judgment entered after trial in this court. Claimant cannot allege that she did not know about the debt since she participated in the trial. The defendant condominium did not have any obligation to give a notice to the claimant that it would seek to enforce its rights as a judgment creditor prior to doing so. The FDCPA specifically exempts the actions of an employee of the State to the extent that collecting or attempting to collect any debt is in the performance of his or her official duties (15 USC § 1692a [6] [C]). The actions of the marshal, and the creditor in utilizing the marshal, are exempt from the FDCPA.
Conclusion
Claimant’s motion for summary judgment is denied in its entirety.
Defendant’s motion to dismiss claimant’s cause of action is granted. Claimant has failed to state a cause of action for violation of either the FDCPA or CPLR 5020.
Claimant’s cause of action is dismissed.

 The Legislature has not as yet made this section gender neutral.